(No. 15625.—Judgment affirmed.)
GUILFORD M. HUMPHREY, Appellant, *vs.* WESLEY PERRY, Appellee.

*Opinion filed December 19, 1923.*

1. ELECTIONS—*when cross-errors as to counting ballots need not be considered.* Assignments of cross-error in an election contest on the rejection of ballots initialed by one judge of the election and handed out by another judge and on the rejection of ballots of absent voters not initialed by any judge need not be considered where the judgment declaring the appellee elected is correct and must be affirmed.

2. SAME—*ballot is good if marked in circle of one ticket and in a square of another ticket.* Where the voter makes a cross in the circle of one ticket and in a square opposite a particular candidate's name on another ticket the ballot will be counted for the particular candidate and for all the candidates on the other ticket except the one opposing the particular candidate, and marking a ballot in such manner is in itself no evidence of fraud and is not, alone, sufficient to excite suspicion.

3. SAME—*when ballots are the best evidence.* Where the evidence in an election contest shows a failure of the judges and clerks to comply with the statutory method of counting the ballots, the election returns are discredited and the ballots themselves are the best evidence of the result of the election, and in such case the mere fact that the ballots, when counted by the court, give one party a largely increased majority is not sufficient to discredit them.

APPEAL from the Circuit Court of Cass county; the Hon. GUY R. WILLIAMS, Judge, presiding.

WILLIAM and BARRY MUMFORD, for appellant.

W. H. DIETERICH, for appellee.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

This appeal is prosecuted from a judgment of the circuit court of Cass county in a proceeding to contest the election of mayor of Beardstown. Guilford M. Humphrey, the contestant, was a candidate for mayor of said city at the election held April 17, 1923, on the Independent ticket, and the contestee, Wesley Perry, was a candidate for the same office on the Independent-Labor ticket. There were no other candidates for mayor at the election. The election returns as made by the election officers, and the proclamation of the result made by them, gave Perry a majority of 64 votes in the five wards of the city, and he was declared elected, duly qualified and entered upon the discharge of the duties of the office. Humphrey filed his petition to contest the election of Perry in the circuit court. After the issues were made up the cause was tried. On the trial of the case the ballots were re-counted, and the court declared Perry was duly elected by a majority of the votes cast and adjudged the costs against Humphrey, the contestant. He has prosecuted this appeal from that judgment. The parties will hereafter be referred to as appellant and appellee.

The petition is lengthy and sets out numerous grounds of contest, but the decision of the case depends, as appellant says in his brief, upon two questions: (1) Whether the court erred in not making a proportionate reduction in the first ward of ballots initialed by a judge other than the judge who handed the ballots to the voters; and (2) whether the ballots should have been counted in the third,

fourth and fifth wards or the election returns should have been accepted as the best evidence.

There were a considerable number of ballots cast by absent voters. None of them, except in the fourth ward, were indorsed by the initials of any judge of the election. The court rejected those ballots and also made a proportionate reduction of ballots in the second ward on the ground that ballots were handed voters by a judge other than the one whose initials were indorsed on them, and appellee has assigned cross-errors on those rulings.

There are five wards in the city of Beardstown and each constitutes one election precinct. The judges in the first ward were Howard, Tobin and Rebman. All of them at times handed ballots to the voters. Howard testified he thought he indorsed his initials on one-half the ballots voted in that ward. Tobin thought he indorsed about one-third of them and Rebman thought he indorsed about one-third of them. Howard testified he handed the voters ballots indorsed by him and that each of the other judges handed out a few. Tobin testified he handed no ballots to voters except those he indorsed, and Rebman testified he did not know whether he handed any ballots out which were indorsed by another judge. The court held sections 22 and 26 of the Australian Ballot law were mandatory, and that the ballots must be handed to the voters by the judge who indorsed his initials on them. (*Laird* v. *Williams*, 281 Ill. 233.) The court correctly held that under the evidence a proportionate reduction was not required in the first ward. In the second ward the evidence showed the judges were Phelps, O'Reilley and Barneycastle. Phelps indorsed his initials on the ballots. They were handed the voters by O'Reilley, were received from the voters and deposited in the ballot-box by Barneycastle. The proof was that Phelps saw the ballots delivered to the voters with his initials indorsed on them, and appellee contended what was done was a compliance with the law, as much so as if Phelps had

himself handed the ballots to the voters. The court over-ruled appellee's contention and made a proportionate reduc-tion, under the rule announced in *Choisser* v. *York,* 211 Ill. 56, of 246 votes for appellee and 210 for appellant. The result as declared by the court gave appellant 253 votes and appellee 381 in the first ward, appellant 34 votes and ap-pellee 41 votes in the second ward,—a majority in the two wards for appellee of 135. None of the absent voters' bal-lots in those two wards were counted because they were not initialed by a judge of the election. The same is true of absent voters' ballots in the third and fifth wards. In the fourth ward the absent voters' ballots were properly indorsed by initials of a judge and were counted.

The result of the count of the ballots in the third ward as declared by the court gave appellant 299 votes and ap-pellee 312 votes,—a majority for appellee in that ward of 13 votes. In the fourth ward appellant was given 382 votes and appellee 292 votes,—a majority for appellant in that ward of 90 votes. In the fifth ward 192 votes were counted for appellant and 418 votes for appellee,—a majority for appellee in that ward of 226. After the count had pro-ceeded for a while in the third ward, ballots were discovered which were marked with a cross in the circle at the head of the Independent (or Humphrey) ticket and also in the square opposite the name of appellee on the Independent-Labor ticket. Appellant objected to all such ballots in the third, fourth and fifth wards being counted, but the court overruled the objection, counted said ballots, and that rul-ing is the principal question argued in appellant's brief.

It was stipulated between the parties that the ballots, tally-sheets and all files connected with the election, and which were then in the possession of the city clerk, might be admitted in evidence without objection to the manner in which they had been kept after the election; that the ballots and other papers connected with the election were delivered to the city clerk on the evening of the day of the

election in the same condition they were in when they left
the polling places; that they had since been in the posses-
sion of the city clerk, who had kept them in the same con-
dition they were in when he received them, until May 23,
when they were brought to Virginia, the county seat, and
placed in a vault in the court house, where they have since
been kept. The trial began May 24, during which day the
ballots cast in the first and second wards were counted.
Court adjourned the evening of May 24 to the next day,
May 25, and it is contended by appellant that at some time
before the ballots were to be counted by the court, the bal-
lots in the third, fourth and fifth wards had been tampered
with and were not the best evidence as to the result of the
election in those wards, and the court erred in not so decid-
ing and in not holding the election returns of those wards
were the best evidence. If that contention is sustained it
would necessarily follow that the judgment is wrong. By
the count of the ballots by the court in the first and second
wards appellee was given 135 majority in those wards. The
election returns gave appellant a majority in the third and
fourth wards of 323 and appellee a majority of 143 in the
fifth ward. That would give appellant a net majority of
45 votes.

Appellant contends that there were 24 ballots in the
third ward, 72 in the fourth and 82 in the fifth which un-
mistakably show they had been tampered with, and for that
reason the ballots were not the best evidence and the elec-
tion returns as to those wards should have been accepted
as the best evidence. All of those ballots, as we understand
it, were marked in the circle at the head of the ticket on
which appellant's name appeared and also in the square
opposite the name of appellee and were by the court counted
for appellee. A few of such ballots were marked with dif-
ferent colored pencils, and on several of them one mark ap-
peared to have been made while the ballot was lying on

a smooth surface and one while it was lying on a rough surface.

The original ballots have been certified to us and we have examined them. We find the marks in the circle of the Independent ticket and in the square opposite appellee's name on a few ballots appear to have been made with different colored pencils. Nearly all the ballots show no evidence of the use of different colored pencils, but it clearly appears from the pencil markings on the ballots that there must have been in the booths, or some of them, two kinds of pencils, for some ballots are marked only with what appears to be an indelible pencil and some only with an ordinary lead pencil. A voter may lawfully make a cross in the circle at the head of one ticket and a cross in the square opposite the name of a candidate on another ticket, and the ballot should be counted for all candidates on the ticket having a cross in the circle except the candidate opposing the candidate on the other ticket opposite whose name the cross is made in the square. Such ballot should be counted as a vote for the candidate opposite whose name the square is marked with a cross.

Appellant insists that the markings on the ballots objected to in the third, fourth and fifth wards on the ground of fraud, being approximately 175 in number, show conclusively on their face that they had been tampered with; that there were so many of them that their appearance can not be explained on any other ground except that a fraud had been committed. Marking a ballot in the circle at the head of one ticket and in the square opposite the name of a candidate on another ticket is in itself no evidence of fraud and is alone not sufficient to excite suspicion. The only really suspicious circumstance appearing is that the large number of ballots so marked did not appear in the first and second wards, and that in marking some of the ballots an indelible pencil and an ordinary lead pencil appear to have been used, and some of the marks on the

same ballots appear to have been made on a smooth surface and some on a rough surface. In addition to the stipulation of the parties that the ballots had been properly protected by the city clerk and were competent evidence, the proof shows that when the clerk brought them to the county seat for the trial he procured a trunk, placed them in it, deposited the trunk in a vault in the county clerk's office, locked the trunk and kept the keys, and the packages containing the ballots and other election papers were in the same condition when the trunk was opened as when he placed them in the trunk and locked it. The county clerk testified that the trunk was placed in a vault in his office, that the vault was locked with a combination lock each night while the trunk remained there, and that the combination lock was known only to himself and his deputy. If it be conceded, as contended by appellant, that, notwithstanding the stipulation, if the ballots, when opened, showed conclusively that they had been tampered with and altered they should not be received as evidence of the result of the election, we think the proof relied on, which is the ballots themselves, is entirely insufficient to justify discrediting them for fraud.

Appellant argues that the court should have disregarded the ballots in the third, fourth and fifth wards and accepted the election returns as the best evidence. We think the election returns were even more discredited by the testimony than the ballots were by their appearance. Without setting out the evidence, it is sufficient to say that clerks and challengers handled ballots, arranged the straight and scratched ballots in separate piles, and did part of the counting without the aid or supervision of any judge. In two of the wards the clerks made entries of the votes while they were being counted, on sample ballots, and afterwards transferred them to tally lists when the count was completed. In short, the evidence shows there was a failure to comply with the

statutory requirement that the judges shall count the votes and the clerks shall mark down on the tally list the vote each candidate has received. In view of the disregard of the law in counting the votes the election returns are, in our opinion, discredited. It was testified to by an election judge of the fourth ward that he noticed 25 or 50 ballots in that ward marked with a cross in the circle of the Independent ticket and a square opposite appellee's name, and by a judge in the fifth ward that he estimated there were 50 such ballots cast in that ward. The trial court did not err in counting the ballots in the third, fourth and fifth wards and accepting them as the best evidence of the result of the election.

Appellant regards it as rather remarkable that there was such a discrepancy between the election returns and the result as declared by the court after counting the ballots. To our minds the discrepancy is more compatible with the conclusion from the evidence that the ballots were not correctly counted by the election judges than with appellant's theory that the ballots had been tampered with after the election. The mere fact that the ballots, when counted by the court, gave appellee a largely increased majority is not sufficient to discredit them, especially in view of the manner in which they were counted. Accepting the ballots in all the wards as the best evidence, excluding the absent voters' ballots which were not initialed by any judge, and making a proportionate reduction in the second ward on account of some of the ballots having been handed the voters by a judge other than the one whose initials were indorsed on them,— all of which the court did,—appellee was elected by a clear majority. That being true, we do not consider it necessary to pass on the cross-errors assigned by appellee, as the judgment must be affirmed without regard to whether there is any merit in the cross-errors.          *Judgment affirmed.*