(No. 41006, 41007 cons.—

THE PEOPLE *ex rel.* Mayer Goldberg, Appellant, *vs.* FRANCIS T. DELANEY, Appellee.—THE PEOPLE *ex rel.* JAMES C. SPANGLER, Appellant, *vs.* L. SHELDON BROWN, Appellee.

*Opinion filed March 28, 1968.—Rehearing denied May 27, 1968.*

LEONARD L. LEVIN, of Chicago, (MARVIN SACKS, of counsel,) for appellant Mayer Goldberg.

ERWIN H. GREENBERG, of Chicago, for appellant James C. Spangler.

KIRKLAND, ELLIS, HODSON, CHAFFETZ & MASTERS, of Chicago, (DON H. REUBEN and LAWRENCE GUNNELS, of counsel,) for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The issues in these consolidated *quo warranto* actions concern the method of conducting elections for the office of circuit judge. Both cases arise out of the election held in Cook County in November of 1966. One of them involves the election of four judges for full terms, and the other an election to fill three vacancies caused by two deaths and one resignation. The common question is whether at such elections each candidate runs only against the candidate whose name appears opposite his name on the ballot or whether he runs against all other candidates. The parties describe the former as a "head on head" election and the latter as a "field" election.

For the four full-term offices each major political party nominated four candidates whose names appeared on the ballots in the order in which they were certified by the party to the Secretary of State.

The form of the paper ballots used in the election and the total votes received by each candidate were as follows (asterisks precede the names of the four candidates who received the highest vote):

| (Democratic) | | (Republican) | |
|---|---|---|---|
| FOR JUDGES OF THE CIRCUIT COURT COOK COUNTY JUDICIAL CIRCUIT (Full Term) (Vote for Four) | | FOR JUDGES OF THE CIRCUIT COURT COOK COUNTY JUDICIAL CIRCUIT (Full Term) (Vote for Four) | |
| PHILIP ROMITI | 933,124 | *HARRY S. STARK | 953,983 |
| *WALTER J. KOWALSKI | 971,526 | *FRANCIS T. DELANEY | 958,753 |
| EARL E. STRAYHORN | 899,603 | *THOMAS R. MC MILLEN | 988,155 |
| MAYER GOLDBERG | 939,833 | RAYMOND E. TRAFELET | 927,240 |

On the face of the voting machines the names of the candidates were aligned in the same order, centered beneath or beside the single description:

FOR JUDGES OF THE CIRCUIT COURT
OF COOK COUNTY
(Full Term)
(Vote for Four)

The machines were so prepared that voters were physically able to vote for candidates whose names appeared opposite each other.

The four candidates who received the highest number of votes were declared elected and installed in office. The plaintiff Goldberg contends that because Francis T. Delaney received fewer votes than Walter J. Kowalski, whose name appeared opposite Delaney's on the ballot, Delaney was not elected. He also contends that because he received more votes than Raymond E. Trafelet, whose name appeared opposite his on the ballot, he was elected. His complaint prayed that he be installed as judge in place of Delaney.

In the election to fill the three vacancies each political party nominated a candidate to fill a particular vacancy. For example, the Democratic party nominated the plaintiff, James C. Spangler, and the Republican party nominated Joseph T. Lavorci, to fill "the vacancy caused by the resignation of Honorable Alexander J. Napoli." Each party similarly nominated a specifically named candidate to fill each of the other two vacancies.

After he received these nominations, the Secretary of State requested the opinion of the Attorney General upon the following questions: "When certifying to the various county clerks Judicial Candidates nominated to fill two or more vacancies the expiration dates of which are identical, is it necessary to specify which candidates were nominated to fill what vacancies? If it is not necessary to specify which candidates are to fill which vacancies, what information should be carried above the nominee or nominees?"

In his opinion the Attorney General discussed certain decisions and concluded: "It therefore follows that in the Cook County case where there are three vacancies in the office of circuit court judge, all three terms expiring in the year 1970, all of said candidates are opposed to each other on both political party tickets and the three with the greatest number of votes will be elected. There is therefore no reason for identifying a candidate who has been nominated to fill each particular vacancy. As a suggestion, immediately above the names of the candidates as an instruction to the voters could be placed 'To fill three vacancies, terms expiring A.D. 1970.'"

The Secretary of State then certified to the local election officials the six candidates for the vacancies, three from each party, as a group. The form of the paper ballots used in the election to fill the vacancies and the total vote received by each candidates were as follows (asterisks precede the names of the three candidates who received the highest vote):

| DEMOCRATIC | | REPUBLICAN | |
|---|---|---|---|
| CIRCUIT COURT FOR JUDGES OF THE COOK COUNTY JUDICIAL CIRCUIT (To Fill Three Vacancies— Terms Expire 1970) (Vote for Three) | | FOR JUDGES OF THE CIRCUIT COURT COOK COUNTY JUDICIAL CIRCUIT (To Fill Three Vacancies— Terms Expire 1970) (Vote for Three) | |
| JAMES C. MURRAY | 925,196 | *REGINALD J. HOLZER | 980,481 |
| *ARCHIBALD J. CAREY, JR. | 952,717 | *L. SHELDON BROWN | 944,648 |
| JAMES C. SPANGLER | 937,795 | JOSEPH T. LAVORCI | 927,830 |

On the face of the voting machines the names of the candidates were aligned in the same order; and the offices to be filled were similarly designated, but the direction "Vote for Three" was centered. It appeared but once, and was not repeated in each party column. The machines were so prepared that voters were physically able to vote for candidates whose names appeared opposite each other.

The three candidates who received the highest number of votes were declared elected and installed in office. The plaintiff Spangler contends that because L. Sheldon Brown received fewer votes than Archibald J. Carey, Jr., whose name appeared opposite Brown's on the ballot, Brown was not elected. He also contends that because he received more votes than Joseph T. Lavorci, whose name appeared opposite his on the ballot, he was elected. His complaint prayed that he be installed as judge in place of Brown.

The cases were heard on stipulated facts and the trial judge declined to issue the writs, in part because to do so would cause confusion. The plaintiffs appealed to the appellate court, but because of the importance of the cases and the desirability of early final dispositions, this court took jurisdiction under Rule 302(d). Ill. Rev. Stat. 1967, chap. 110A, par. 302.

The plaintiffs argue that the elections should have been conducted "head on head," that they were conducted in a manner consistent with head-on-head voting, and that the defendants must prove their right to hold office. The defendants dispute these contentions and also argue that "[B]y failing to make any protest or to institute any proceeding before the election, the relators plainly waived, and are now estopped from urging, their present contentions." The defendants further contend that "[t]he 'head on head' election result sought by relators would plainly violate state and federal constitutional guarantees of the right to vote." We do not decide whether either or both elections should have been "field" or "head on head," because in our opinion the trial judge correctly exercised his discretion in refusing the requested relief.

A trial court necessarily exercises discretion in determining whether to grant the extraordinary writ of *quo warranto*. As has often been stated, "[a]n unreasonable delay or acquiescence on the part of persons complaining, as

well as a consideration of the public interest or convenience, will justify a refusal to grant leave to file the information * * *. (*People* v. *Jones,* 308 Ill. 246; *People* v. *Burson,* 307 id. 533; *People* v. *Stewart,* 306 id. 470; *People* v. *Rendleman,* 250 id. 289; *People* v. *Crowley,* 250 id. 282; *People* v. *Hanker,* 197 id. 409; *People* v. *Schnepp,* 179 id. 305.)" *People ex rel. Prather* v. *Miller,* 331 Ill. 395, 399-400.

In *People ex rel. Lewis* v. *Waite,* (1873) 70 Ill. 25, the relevant equitable and public policy considerations that govern the issuance of the writ were emphasized. The court said: "The counter affidavits show relator participated in the election he now seeks to have declared void, by voting thereat, and was himself an opposition candidate to respondent. Relator knew then, as well as now, what irregularities had intervened in the conduct of the election, and he ought not to be permitted to disturb the public welfare by having an election declared void, in which he participated with a full knowledge of all irregularities that existed. A sound public policy forbids it. The only informality charged is, the election was held at an improper place. This fact was known to relator. He uttered no complaint at the time, but submitted his claims to the office to the voters of the town voting at that place, and claimed the right to and did have his own vote recorded. These facts make it inequitable that he should have the remedy sought, and the court, in the exercise of a sound, legal discretion, properly discharged the rule." (70 Ill. at 27.) See also *Village of Averyville* v. *City of Peoria,* 335 Ill. 106, 118; *People ex rel. Garland* v. *Moore,* 73 Ill. 132; *People ex rel. Elder* v. *Quilici,* 309 Ill. App. 466, 474-75; *People ex rel. Earley* v. *Bierman,* 249 Ill. App. 217.

Plaintiffs seek to avoid these holdings on the ground that they did not know prior to the election that the election would be conducted on a "field" basis. They further contend

that the ballots could not have put them on notice since the ballots were consistent with a "head on head" election, and that, even if the ballots were improper, they lacked a remedy prior to the election to compel a change.

In particular, the plaintiffs direct our attention to the fact that "Vote for Four" and "Vote for Three" appeared on the paper ballots in both the Democratic and Republican columns. It is argued such a designation is more consistent with a "head on head" election than a "field" election, because it indicates that the voters should choose all four (or three) Democratic candidates or all four (or three) Republican candidates. We agree with the plaintiffs that such a designation, in both columns, is confusing to the voter. But the plaintiffs do not seek to set aside the election and we do not pursue the possibility that some voters might have been disenfranchised by relying literally upon those designations. So far as the plaintiffs are concerned the issue is whether the designations were such that they could have known by inspecting the ballots that the election would be conducted on a field basis. On the paper ballots and the face of the voting machines, the names of the candidates for the two groups of judicial offices were arranged in the identical manner as were the names of candidates for University of Illinois Trustees, Cook County Commissioners, and other group offices. Moreover, "Vote for Four" or "Vote for Three" appeared only once on the face of the voting machines, and was placed either above or beside the names of all of the candidates. That instruction, appearing alone, has been interpreted to mean that voters are not required to choose between candidates whose names appear opposite each other on the ballot. See, *e.g. Burr* v. *Voorhis,* (1920) 229 N.Y. 382, 128 N.E. 220; *State ex rel. Smith* v. *Kozer,* (1924) 112 Ore. 286, 229 Pac. 679.

These ballots, as well as instructions to the election judges which described the circuit court judges as a group

office, were available prior to the election, and correction was possible. Section 16—5 of the Election Code provides, "Ballots shall be printed and in possession of the officer charged with their distribution at least two days before the election and subject to the inspection of candidates and their agents; if any mistakes be discovered they shall be corrected without delay." (Ill. Rev. Stat. 1965, chap. 46, par. 16—5.) And under section 24—13 of the Election Code (Ill. Rev. Stat. 1965, chap. 46, par. 24—13) a representative of each political party is invited "at least forty (40) days before such election" to be present when the voting machines are prepared. Section 24—13 continues, "Unless objection is filed, within two days, with the officer, officers, or board charged with supplying voting machines, to the use of a particular machine or machines, such voting machine or machines when certified to be correct by the custodian shall be conclusively presumed to have been properly prepared for use at the election for which they were prepared."

It can not make a difference that the plaintiffs personally, as distinguished from the representatives of their party, did not see the ballots or the voting machines prior to the election, or otherwise know that the election would be conducted on a field basis. Sections 16—5 and 24—13 evidence a policy, as did *People ex rel. Lewis* v. *Waite,* 70 Ill. 25, that in the interest of finality mistakes should be corrected before rather than after an election.

The judgments of the circuit court of Cook County are affirmed.

*Judgments affirmed.*