(No. 46485.—

WILLIAM E. JOHNSON, Appellee, v. STATE BOARD OF ELECTIONS *et al.,* Appellants.

*Opinion filed March 29, 1974.—Rehearing denied May 31, 1974.*

Leon G. Scroggins, of Granite City, for appellant.

Michael Levinson, of Springfield, and Thomas Feehan, of Joliet, for appellee.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

In this action the circuit court of Sangamon County held that the State Board of Elections had erroneously construed the Constitution and the applicable statutes in ruling that candidates for judicial vacancies must run on a "head-on-head" rather than a "field" basis in the March 1974 primary election for the office of resident circuit judge in Madison County. The quoted terms are used to describe two different methods employed when more than one vacancy in an office is to be filled at a single election. In a head-on-head election there is a separate contest for each position to be filled. In a field election all candidates run against all other candidates. For example, if we assume five judicial vacancies, in a head-on-head election there would be five contests; in a field election there would be one contest and the five candidates receiving the highest number of votes would be declared elected.

The facts are undisputed. There are two vacancies in the office of resident circuit judge in Madison County. The plaintiff and two others are candidates for the Democratic nomination for resident circuit judge. Neither the plaintiff nor the other two candidates specified the particular vacancy for which he is a candidate. The Board requested that they do so. All three candidates complied with this request, but the plaintiff did so under protest, and only after he had been advised that the Board of Elections had determined that each candidate must run for a specifically designated vacancy.

He then filed this action seeking a mandatory injunc-

tion to compel the Board to rule that elections to fill vacancies in the office of circuit judge are to be conducted on a "field" basis, with the candidates receiving the highest number of votes to be declared nominated, instead of a head-on-head basis. The circuit court sustained the plaintiff's contention, and issued the mandatory injunction he requested. The State Board of Elections appealed and the appeal was transferred to this court and expedited under Rule 302(b) (50 Ill.2d R. 302(b)). After considering the briefs filed on behalf of the parties, the court entered an order reversing the judgment of the circuit court. This opinion sets forth the reasons for that disposition.

The following provisions of section 12 of article VI of the Constitution of 1970 are pertinent:

"(a) Supreme, Appellate and Circuit Judges shall be nominated at primary elections or by petition. Judges shall be elected at general or judicial elections as the General Assembly shall provide by law. A person eligible for the office of Judge may cause his name to appear on the ballot as a candidate for Judge at the primary and at the general or judicial elections by submitting petitions. The General Assembly shall prescribe by law the requirements for petitions.

\* \* \*

(c) A vacancy occurring in the office of Supreme, Appellate or Circuit Judge shall be filled as the General Assembly may provide by law. In the absence of a law, vacancies may be filled by appointment by the Supreme Court. A person appointed to fill a vacancy 60 or more days prior to the next primary election to nominate Judges shall serve until the vacancy is filled for a term at the next general or judicial election. A person appointed to fill a vacancy less than 60 days prior to the next primary election to nominate Judges shall serve until the vacancy is filled at the second general or judicial election following such appointment."

Of these provisions the following sentence in paragraph (c) bears most directly on the problem: "A person appointed to fill a vacancy 60 or more days prior to the next primary election to nominate Judges shall serve until

the vacancy is filled for a term at the next general or judicial election." If emphasis is centered upon the words "a vacancy" and "the vacancy" this sentence indicates that the filling of each vacancy is a separate matter and so supports the proposition that elections should be held on a "head-on-head" basis. On the other hand, if emphasis is focused upon the words "for a term" that result is less clear, for both the report of the Committee on the Judiciary and the debates at the Constitutional Convention show that the expression "for a term" means for a full term, and not for the unexpired term of a predecessor. (Record of Proceedings, Sixth Illinois Constitutional Convention, Vol. VII, p. 2603; Vol. V, p. 4244.) Since there are no unexpired terms, it can be argued that there is no occasion to distinguish between one vacancy and another.

Past practice has not been consistent. In 1966, the election to fill judicial vacancies was conducted on a field basis while the 1968 and 1970 elections were conducted on a head-on-head basis. The 1966 election was challenged on the ground that judgeships were not group offices and that the election should therefore have been conducted on a head-on-head basis. But the *quo warranto* action was not commenced until after the election, and this court held that the trial court had properly exercised its discretion in refusing to entertain it on the ground that the relators could not complain since they had participated in the election with knowledge of the irregularities of which they later sought to complain. *People ex rel. Goldberg v. Delaney* (1968), 39 Ill.2d 474.

The argument advanced by the plaintiff in the present case, in support of the determination of the trial court that the election should be conducted on a field basis, rests upon this court's decision in *Pires v. Bracken* (1952), 412 Ill. 416. That case, however, was not concerned with the basis on which an election to fill vacancies in judicial offices should be conducted. Rather, it dealt with the method of counting the ballots cast at such an election

after it had been conducted upon a field basis. The problem that confronted the court in the *Pires* case and the court's solution of that problem appear in the following excerpt from the opinion:

"The law is clear in cases where only a single office is to be filled and only one candidate elected. In such cases, when a voter makes a cross in the circle of one ticket and in a square opposite a particular candidate's name on another ticket, the ballot should be counted for all candidates on the ticket having a cross in the circle, except the candidate opposing the one on the other ticket opposite whose name a cross is made in the square, and the ballot is counted as a vote for the candidate opposite whose name the square is marked with a cross. (*Humphrey v. Perry,* 310 Ill. 373, 378; *People ex rel. Frazier v. Altenberg,* 260 Ill. 191; *Constant v. Shockey,* 259 Ill. 496.) The specific marking controls the general, and the ballot cannot be counted for the candidate of the party whose circle is marked, but, as to that office, only for the opposing candidate whose name is marked by a cross in the square.

In this case, however, three candidates were to be elected, and the ballot contained the names of three candidates on the Republican ticket and one on the Democratic ticket. In such cases it cannot be said that the latter is a candidate against any particular one of the Republican candidates. Each voter decides for himself whom he will regard as opposing candidates. (*Whittam v. Zahorik,* 91 Iowa 23, 59 N.W. 57.) In the first group of ballots alleged in the complaint the voter marked the circle of the Republican Party, thereby indicating he intended to vote for the three candidates for circuit judge named on that ticket, except as that intention was affected by

his marking the name of Bracken, the only Democratic candidate for circuit judge. The latter is clearly designated in the manner provided by law as a candidate for whom the ballot must be counted, but the voter has given no indication of a preference among the Republican candidates. Three of the four candidates were to be elected, and, as the voter marked the circle of the Republican party and did not mark any of the squares opposite the names of the Republican candidates, it cannot be determined for which two of the Republican candidates he intended to cast his ballot. The ballot was intended to be cast for the Democratic candidate, however, and that intention was expressed in the manner provided by law. It was proper, therefore, to count all such ballots for Bracken and not for any other candidate for circuit judge." 412 Ill. at 419-420.

It is clear that if there is a difference in the terms of the offices to be filled, a field election may not be conducted. (*People ex rel. Frole v. Czarnecki* (1912), 256 Ill. 567.) On the other hand where the terms of the judges to be elected commenced at the same time and ran for the same period field elections have been held proper. *People ex rel. Cleland v. Barnes* (1912), 255 Ill. 379; see also *People ex rel. Holdom v. Sweitzer* (1917), 280 Ill. 436, 449.

Different considerations were advanced in *People ex rel. Jonas v. Schlaeger* (1942), 381 Ill. 146, which arose when a candidate for judicial office died between the date of the election and the date upon which the new term would commence. The court said:

"We are not impressed with the argument that the office of judge of the superior court can be properly designated as a group office. The cases cited in which group officers are involved are of no aid in this case. While it is true that

there are twenty-one judges provided for by the statute, they cannot be regarded as a group. They do not act collectively. Each occupies an independent office with equal powers and duties. They cannot and do not act jointly, or as a group. (*Wayland v. City of Chicago*, 369 Ill. 43; *Courson v. Browning*, 78 id. 208; *Hall v. Hamilton*, 74 id. 437; *Harvey v. Van DeMark*, 71 id. 117.) They function separately and independently. Each holds a separate, although similar, office, in no sense jointly with, or dependent upon, the others. In their functions, powers and duties they are, in every sense, equal. Each functions as the superior court of Cook County. (*Wayland v. City of Chicago, supra.*) The case cannot therefore be disposed of on the principles announced in the cases involving group officers who function as one body and who must act jointly." 381 Ill. at 153.

These considerations militate strongly against a field election and in favor of treating each vacancy in judicial office separately, to be filled on a head-on-head basis. In addition, the result of the election involved in *Pires v. Bracken*, 412 Ill. 416, emphasizes an inherent difficulty in a judicial election conducted on a field basis; enough votes to have changed the outcome of that election had to be disregarded because it was conducted on a field basis. The strong likelihood that the intentions of considerable numbers of voters will be frustrated if a judicial election is conducted on a field basis could not readily be eliminated. Moreover, field elections will in all likelihood give rise in the future to litigation concerning the necessity, if any, of rotating the positions of the respective candidates upon the ballot. See *Mann v. Powell* (N.D. Ill. 1969), 314 F. Supp. 677, *aff'd* (June 15, 1970), 398 U.S. 955, 26 L. Ed. 2d 539, 90 S. Ct. 2169, 2170.

The argument in favor of the field election has been thus stated:

"It is at once apparent that a vice of the head-to-head election is that the political parties will both understandably tend to pair their best candidates so that the most qualified ones on the ticket may lose while the least able candidates may win. The field election would often avoid such a result and certainly the matter deserves the attention of the legislature. At least, we ought to know definitely how our judicial ballots are to be construed and *every* election should be conducted uniformly as either head-to-head or field." Reuben, Our Judicial Election Laws (1969), 50 Chicago Bar Record 240, 241.

We agree that this is not a matter that can be settled one way for this election, and the other way for the next, and we have analyzed a number of the cases that bear upon the problem because of its recurrent nature and because of the importance of a definitive settlement.

Section 1A—7.1 of the Election Code provides:

"In the event there is a tie vote of the membership of the State Board of Elections with respect to proposed action of the Board or with respect to any issue requiring a vote by the Board, the clerk of the Board upon the direction of any 2 members who certify that there is a deadlock, shall select by lot the name of one of the members of the Board. The member so selected shall be disqualified from voting on the particular proposition and the remaining qualified members shall proceed to decide the proposition. The vote on any proposition decided pursuant to the tie-breaking procedure of this Section shall not be reconsidered nor shall any policy determined thereby be revised for 9 months except by unanimous vote of the members of the State Board." Pub. Act. 78—918, effective Oct. 22, 1973.

We have been advised that this method was used by the Board of Elections in determining that elections to fill judicial vacancies would be conducted on a head-on-head basis. In our opinion the method of conducting these elections is not an "issue requiring a vote by the Board,"

for under the provisions of section 12 of article VI of the Constitution the General Assembly is to provide by law the requirements for a petition to place a name on the ballot as a candidate for judge. As the Board points out in its brief, "the Illinois Statutes are silent as to the method of certification of judicial candidates."

There are, however, considerations which sustain the action of the Board of Elections in this case. The Board was not organized until Friday, December 7, 1973. Monday, December 10, 1973, was the first date for filing nominating petitions. Before the Board was organized, instructions had been issued by the Secretary of State that judicial vacancies would be filled on a head-on-head basis; more than 90% of all of the nominating petitions for judicial office had been prepared and filed on that basis. The widespread reliance thus demonstrated upon those instructions cannot be disregarded without serious disruption of the elective process and grave injustice. We hold, therefore, in the absence of definitive legislation to the contrary, elections to fill vacancies in judicial office are to be conducted upon a head-on-head basis.

It is for these reasons that the judgment of the circuit court of Sangamon County was reversed.

*Judgment reversed.*