JOLIET TOWNSHIP HIGH SCHOOL DISTRICT NO. 204 *et al.*, Plaintiffs-Appellees, *v.* THE REGIONAL BOARD OF SCHOOL TRUSTEES OF KENDALL COUNTY, Defendant.—(ETHEL A. FROMM *et al.*, Intervenors-Defendants-Appellants.)

Second District    No. 78-44

Opinion filed June 6, 1979.—Rehearing denied July 13, 1979.

Matthews, Dean, Eichmeier, Goodin & Mrkvicka, of Aurora, for appellants.

Dallas C. Ingemunson, State's Attorney, of Yorkville, and McKeown, Fitzgerald, Zollner, Buck, Sangmeister & Hutchison, and Herschbach, Tracy, Johnson, Bertani & Wilson, both of Joliet, for appellees.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

A petition requesting an election upon the question of whether a new community consolidated school district should be formed was filed with the Regional Board of School Trustees of Kendall County, pursuant to section 11—1 of the School Code (Ill. Rev. Stat. 1975, ch. 122, par. 11—1). During the pendency of proceedings on this petition, Joliet Township High School District No. 204 and Troy Community Consolidated School District No. 30—C filed a complaint in the circuit court of Kendall County, naming the Regional Board of School Trustees of Kendall County defendant, challenging the Board's authority to proceed upon the

petition and seeking injunctive and declaratory relief on the grounds that the petition constituted an improper attempt to organize a community consolidated school district out of parts of existing school districts. Thereafter, various individuals residing in the proposed community consolidated school district, as well as Channahon Elementary School District No. 17, Minooka Elementary School District No. 201, and Minooka High School District No. 111, petitioned for, and were granted, leave to intervene as defendants in the circuit court action. The trial court subsequently entered an order finding that the Regional Board of School Trustees of Kendall County lacked authority to proceed on the petition, since the territory described in the petition included portions of existing school districts. The Board was also enjoined from proceeding with hearings on the petition. The intervenors-defendants have appealed this ruling; the Regional Board of School Trustees of Kendall County has not filed a brief before this court.

This case turns solely upon a question of the correct construction to be accorded section 11—1 of the School Code (Ill. Rev. Stat. 1975, ch. 122, par. 11—1). The first paragraph of section 11—1 provides, in part, as follows:

> "Any contiguous territory having a population of not less than 1500 and not more than 500,000 persons and an equalized assessed valuation of not less than $5,000,000 *and bounded by school district lines* may be organized into a community consolidated school district as provided in this article * * *." (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 122, par. 11—1.)

The language "bounded by school district lines" has been in the statute or its predessesors since 1919. In a number of cases the Illinois Supreme Court held that this language meant that only entire school districts could be consolidated and that a community consolidated school district could not be formed out of *parts* of common school districts. See *People ex rel. Dixon v. Community Unit School District No. 3* (1954), 2 Ill. 2d 454; *People ex rel. Verlie v. Madison* (1925), 317 Ill. 477; *People ex rel. Taylor v. Camargo Community Consolidated School District* (1924), 313 Ill. 321; *People ex rel. School Directors v. Exton* (1921), 298 Ill. 119; *People ex rel. Lewman v. Moyer* (1920), 298 Ill. 143.

The territory of the proposed community consolidated school district in this case has a population of more than 1,500 but less than 500,000 and an equalized assessed valuation of more than $5,000,000. The territory of the proposed district includes the Minooka High School District, Minooka Elementary School District No. 201, and Channahon Elementary School District No. 17, in their entireties. The overwhelming majority of the territory, at least on a geographic basis, is encompassed by the boundaries of Minooka High School District No. 111. The major exception consists of

a large portion of Channahon Elementary School District No. 17, which is located within the territory of Joliet Township High School District No. 204. Similarly, a small tract of Morris Community High School District No. 101, which was located within Minooka Elementary School District No. 201, has been included within the territory of the proposed community consolidated school district. A considerable section of Troy Community Consolidated School District No. 30—C, as well as some tracts which are within Saratoga Community Consolidated Elementary School District No. 60—C, which were also in Minooka High School District No. 111, have thus been included within the territory of the proposed community consolidated school district. In view of the patchwork of overlapping school districts in the area in question, it would appear that although the proposed territory meets the population and valuation requirements of the statute, there is no viable way that the drafters of the petition could have outlined a territory which would have consisted only of entire school districts without including parts of other school districts.

Obviously, if the language "bounded by school district lines" in the current statute means that the organization of a community consolidated school district may not result in the division of any existing school district, then the territory described in the petition involved here could not lawfully be organized into a consolidated district.

However, the statute has been substantially amended since the last time that the Illinois Supreme Court construed the phrase "bounded by school district lines." At the time of *People ex rel. Dixon v. Community Unit School District No. 3* (1954), 2 Ill. 2d 454, the statute provided simply that upon the filing of a petition for a community consolidated school district the County Superintendent of Schools would order an election on the question. (Ill. Rev. Stat. 1955, ch. 122, par. 8—1.) Following an amendment in 1957, the statute provided for a more elaborate procedure, includng a hearing where the Board would take into consideration "the division of funds and assets which would result from the organization of the district" and the objections of "any resident in the proposed district or any district affected thereby * * *." (Ill. Rev. Stat. 1957, ch. 122, par. 8— 1.) The same language is found in section 11—1 of the School Code:

> "The county board of school trustees shall hear evidence as to the school needs and conditions of the territory and in the area within and adjacent thereto and *take into consideration the division of funds and assets which will result from the organization of the district,* and shall determine whether it is for the best interests of the schools of the area and the educational welfare of the pupils therein that such district be organized, and shall determine whether the territory described in the petition is compact and contiguous for school purposes.

At the hearing, any resident in the proposed district *or any district affected thereby* may appear in support of the petition or to object thereto. * * *." (Emphasis added.) Ill. Rev. Stat. 1975, ch. 122, par. 11—1.

Since the court in *People ex rel. Dixon v. Community Unit School District No. 3,* and the other cases cited above, indicated that a community consolidated school district may only be formed out of entire school districts, and may not result in the division of an existing school district, the cited provisions of section 11—1 of the School Code raise obvious difficulties. Why is it necessary to take into consideration "the division of funds and assets" in passing upon a petition for formation of a consolidated district, if the formation of a consolidated district could never result in the division of an existing district? How could an existing district be "affected" by the formation of a consolidated district in any significant way (apart from being entirely incorporated within such district), other than through the loss of territory? Could the legislature have intended that this language be nugatory?

The answer to the last question must clearly be "no." It is axiomatic that a statute "should be so read and construed, if possible, that no word, clause, or sentence is rendered superfluous or meaningless." (34 Ill. L. & Prac. *Statutes* §123 (1958).) To hold that a community consolidated school district can only be formed out of entire districts, and that the formation of a consolidated district may never result in the division of an existing district, would violate this fundamental rule of construction by rendering the directive to the County Board of School Trustees to consider the "division of funds and assets," "superfluous or meaningless."

The problem is one of construing the language "bounded by school district lines" in a way that would give meaning to the entire statute. The solution is not difficult. It appears that when the legislature amended the statute in 1957, it must have intended that this phrase revert to a common, rather than a technical, construction. In view of an unquestionable legislative policy of encouraging "larger, stronger, economically sound districts" (*Community Consolidated School District No. 210 v. Mini* (1973), 55 Ill. 2d 382, 390 (Goldenhersh, J., dissenting)), we may infer that the legislature intended that it be possible to form a community consolidated school district even in an area such as to territory described in the petition involved in this case, where district boundaries overlap, and grade school or consolidated (elementary) school districts are divided by the boundary lines that sever existing high school districts. The plain meaning of the phrase "bounded by school district lines" in the context of section 11—1 of the School Code as is now in force is that the entire perimeter of the territory described in a petition for the formation of a community consolidated school district must run along the boundary

lines of existing school districts. The district lines which so encompass the territory may be those of an elementary school district, or a consolidated, unit, or high school district. Thus, for an example, if an elementary school district is located entirely within a single high school district, and therefore not divided by any school district lines, any petition for the formation of a community consolidated school district would have to either include the entire elementary school district, or exclude the elementary school district in its entirety from the territory of the proposed consolidated district. On the other hand, if an elementary or consolidated district is divided by the lines of an existing school district (such as Troy Community Consolidated School District No. 30—C in this case), the petition need not include the entire elementary or consolidated district but instead may include only that portion of the elementary or consolidated school district which is part of the high school district being incorporated in the proposed community consolidated school district.

Applying this construction of the statute to the petition in this case, it is clear that the entire perimeter of the proposed community consolidated school district at every point is located along the lines of some existing school district. The territory described in the petition is thus "bounded by school district lines" and could, if all other requisites are met, be formed into a community consolidated school district. It was therefore error for the trial court to enjoin the Regional Board of School Trustees of Kendall County from conducting further hearings on the petition.

Of course, by so holding this court is not placing its approval upon the envisioned community consolidated school district, and we express no view as to the wisdom of the proposed district, its effect upon existing districts or even as to its contiguity, since none of these questions are before us. We merely hold that there is nothing in the statutes which prohibits the Regional Board of School Trustees from further consideration of the petition.

Therefore, the order of the circuit court of Kendall County herein appealed from is reversed.

Judgment reversed.

WOODWARD and LINDBERG, JJ., concur.