LEONARD MARTIN *et al.*, Plaintiffs-Appellants, *v.* EDMOND A. SOUCIE, Kankakee County Clerk, *et al.*, Defendants-Appellees.

Third District   No. 82—420

Opinion filed October 12, 1982.

Edward G. Vogt, of Kankakee, for appellants.

L. Patrick Power, State's Attorney, of Kankakee (Andrew M. Raucci, of Kusper & Raucci, Special Assistant State's Attorney of counsel), for appellees.

JUSTICE SCOTT delivered the opinion of the court:

On December 14, 1981, the plaintiffs herein, Leonard Martin and Wes Wiseman, filed suit in the circuit court of Kankakee County seeking a judicial determination that the apportionment plan and map governing the election of Kankakee County board members, as passed by the Kankakee County Board on June 29, 1981, failed to comply with statutory requirements set forth in sections 3(b) and 3(c) of "An Act relating to the composition and election of county boards in certain counties" (Ill. Rev. Stat. 1981, ch. 34, pars. 833(b), 833(c)). The relief sought by the plaintiffs was a mandatory injunction compelling (a) an at-large election for county board candidates in 1982, or (b) a court-drawn apportionment plan and map for county board candidates in 1982, or (c) a commission-drawn apportionment plan and map to serve the same purpose. Named as defendants in the lawsuit were Edmond A. Soucie, Kankakee county clerk, and the County of Kankakee. Following a hearing on the merits of the complaint, the circuit court entered a finding that the seven districts drawn on the disputed map did indeed fail to comport with the statutory requirements of sections 3(b) and 3(c); nevertheless, the circuit court ordered that the relief sought by the plaintiffs was barred by both the principle of *laches* and the principle of estoppel. From this order the plaintiffs appealed, urging that *laches* and estoppel do not apply, and the defendants attempted to cross-appeal the finding regarding the map's legality.

It appears that the plaintiffs first learned of the June 29, 1981, apportionment plan on the very day it was adopted by the Kankakee County Board. Yet, it was nearly six months later, on December 14, 1981, that the instant lawsuit was filed. December 14 was the last day for filing nominating petitions for the March primary, and all candidates had filed their petitions as candidates in specifically numbered districts. At the time of the hearing in this cause, February 8, 1982, absentee ballots were already being printed for the primary election, and programming of the voting machines had been accomplished. When the circuit court's decision in this matter was rendered, on February 19, 1982, 16 of the 39 days available to absentee voters in the primary election had already passed. The cost to Kankakee

County for reprinting ballots and reprogramming machines would range from $10,000 to $12,000. Clearly, the delay in initiating and prosecuting this lawsuit had resulted in prejudice to the defendants as the electoral process passed the point of reversal, and where such delay is unreasonable, a defense of *laches* is recognized. (*Brandt v. Phipps* (1947), 398 Ill. 296, 75 N.E.2d 757; *Higgins v. Brunswick Corp.* (1979), 76 Ill. App. 3d 273, 395 N.E.2d 81; *Matchett v. Rose* (1976), 36 Ill. App. 3d 638, 344 N.E.2d 770.) *Laches* is an appropriate defense when the validity of an election is being challenged. (*Thurston v. State Board of Elections* (1979), 76 Ill. 2d 385, 392 N.E.2d 1349; *People ex rel. Goldberg v. Delaney* (1968), 39 Ill. 2d 474, 236 N.E.2d 689.) The circuit court found that the delay of nearly six months in filing suit was not legally justified, and thus was unreasonable. We believe the record supports that finding. In addition, once the suit was filed, no attempt was made to seek temporary relief or a writ of *mandamus*, procedural avenues which would have afforded an earlier opportunity for hearing. These delays by the plaintiffs in filing and prosecuting the instant lawsuit permitted the 1982 electoral process to become irremediable by passage of time. In light of the delay, we agree with the circuit court that the relief sought by the defendants for the election scheduled for November 2, 1982, is barred by reason of *laches*.

The circuit court also held that the plaintiffs were barred from the relief prayed for by reason of estoppel. Despite urging in the complaint that the districts established by the June 29, 1981, map were statutorily defective, the plaintiff Martin circulated petitions and became a candidate for nomination in the March 16 primary from District 1 created by the apportionment plan he attacked. Also, the plaintiff Wiseman circulated nominating petitions for candidates seeking nomination from other districts created by the plan. The circuit court reasoned that it was inconsistent to participate in the primary election by filing and assisting in filing nominating petitions while at the same time attacking the legality of the election by prosecuting the lawsuit. The lower court concluded that the plaintiffs, who participated in the election process with full knowledge of its irregularities, were estopped to question those irregularities. Although the circuit court relied on the authority of *People ex rel Lewis v. Waite* (1873), 70 Ill. 25, *Thurston v. State Board of Election*, and *People ex rel Goldberg v. Delaney* in reaching its conclusion, we have determined that certain factual dissimilarities between the cited cases and the case at bar make the estoppel defense inapplicable in the case *sub judice*; however, the authorities relied on by the plaintiffs are limited to

the estoppel issue and do not address, and therefore contradict, our holding in the *laches* issue.

The defendants attempted to cross-appeal based upon the circuit court's finding that the apportionment plan and map failed to comply with established statutory criteria. The relevant statute provides that in counties where board members are elected by districts, the county board shall develop an apportionment plan that defines such districts so that each:

"a. Shall be equal in population to each other district;

b. Shall be comprised of contiguous territory, as nearly compact as practicable; and

c. May divide townships or municipalities only when necessary to conform to the population requirement of paragraph a. of this Section." (Ill. Rev. Stat. 1981, ch. 34, par. 833.)

It is conceded that the seven districts defined by the June 29, 1981, apportionment plan are substantially equal in population. The circuit court found, however, that the districts are not compact, and divide townships and municipalities unnecessarily.

The requirement of compactness is not simply defined. In discussing the issue of compactness, the lower court noted that:

"Illinois courts have historically given a liberal definition to this term. The territory need not be either rectangular or square. *People ex rel McLain v. Gardner* (1951), 408 Ill. 228, 96 N.E.2d 551. It should be 'concentrated or close or near to a certain center.' *Husser v. Fouth* (1944), 386 Ill. 188, 53 N.E.2d 949; *The People v. France* (1924), 314 Ill. 51, 145 N.E. 240; *The People v. Engle* (1924), 313 Ill. 483, 145 N.E. 231; *The People v. Emmerson* (1924), 313 Ill. 209, 145 N.E. 106. Every reasonable presumption is indulged in favor of validity. *People ex rel McLain v. Gardner*, supra. Most cases defining the term deal with school districts and hold that compactness depends upon the distance and accessibility of all parts of the district from a 'center' or hub which consists of the schoolhouse. Here there is no need for access to a center and the term can be even more liberally construed. Nevertheless, the term 'compact', as used in the statute, ought to have some meaning over and above contiguity, under the familiar rule that a statute should be construed, if possible, so that no word is rendered superfluous or meaningless. *Joliet Twp. High Sch. Dist. v. Bd. of Trustees* (1979), 72 Ill. App. 3d 430, 391 N.E.2d 147."

We agree that compact districts should be "concentrated or close or near to a certain center" and yet we recognize that this requirement

must be liberally construed to accommodate the reality of population density. Nevertheless, districts which are dominated by peninsulas, isthmuses, and promontories, unless necessitated by the overriding requirement of population equality, cannot be called compact except by an expansion of the meaning of that term to such a breadth that it would become virtually meaningless.

In a recent decision where the issue involved the compactness of a legislative district, the supreme court concluded that an elongated district, 125 miles in length, connected by an isthmus just six miles wide, was not "closely united" and therefore not compact. (*Schrage v. State Board of Elections* (1981), 88 Ill. 2d 87, 430 N.E.2d 483.) In defending the compactness requirement, the high court noted that:

> "[w]e have *** a representative form of government. The creation of a representative district which is extremely elongated and not 'closely united' significantly impedes vital constituent-representative communication, thus preventing the achievement of a legislative process which is, in fact, representative." (*Schrage v. State Board of Elections* (1981), 88 Ill. 2d 87, 100, 430 N.E. 2d 483, 488.)

The same rationale applies to representative government at the county level as well as the State level.

■ The circuit court characterized the June 29, 1981, districts as forming "a wheel type pattern in that all districts extend to or into the population center." However, as that court noted, "the spokes of the wheel are badly bent," with the district lines being "winding and tortuous." The lower court concluded that such geographical contortion was not necessitated by the population patterns of Kankakee County. Rather, it appeared to that court, from exhibits offered by the plaintiffs, that the county is roughly divisible into seven reasonably compact parts of substantially equal population.

The circuit court also concluded that the June 29, 1981, apportionment plan unnecessarily divides townships and municipalities. The plan splits Kankakee Township among four districts, Bourbonnais Township among three districts, and Limestone, Ganeer, Sumner, Momence, Aroma, Pembroke and Manteno Townships between two districts each. The City of Kankakee is split four ways, while the City of Momence and the Village of Bourbonnais are each split two ways. The lower court found that these numerous division of townships and municipalities were not necessary to achieve population balance.

■ We observe that the question raised by the cross-appeal was based upon a finding by the circuit court. Yet, the lower court order resolved the issues raised by the plaintiffs' complaint in reliance on

the defense of *laches*. *Laches* is an affirmative defense to the cause of action set forth in the complaint, whether that cause of action is meritorious or otherwise. Since the findings of the circuit court were beyond the scope of its resolution of the matter, it is arguable whether the question raised by the cross-appeal, *i.e.*, the statutory validity of the apportionment plan and map, is essential to the lower court order and thus a controversy properly before us. Generally, nonessential questions raised on appeal are not well taken and will not be considered by reviewing courts. (*Longo v. Board of Trustees* (1977), 50 Ill. App. 3d 314, 365 N.E.2d 672.) Nevertheless, the question raised by the cross-appeal was fully briefed by the parties, it was argued orally before the court, and it was accepted by the parties as a well-taken appeal from the circuit court's findings.

■ In light of the acquiescence of the parties in presenting the issue of the apportionment plan's validity, and because the trial court expressly determined that the plan failed to comply with the statute, we conclude that no prejudice would result, and the interests of judicial economy would be served, by our noting our concurrence with the circuit court's finding.

■ The plaintiffs sought relief for the 1982 elections. That relief is, as previously stated, barred by *laches*; however, the affirmative defense of *laches* is a bar not simply by reason of the passage of time, but in addition by reason of a substantial detriment to defendants' position resulting from the passage of time. (*Brandt v. Phipps* (1947), 398 Ill. 296, 75 N.E.2d 757; *Higgins v. Brunswick Corp.* (1979), 76 Ill. App. 3d 273, 395 N.E.2d 81; *Matchett v. Rose* (1976), 36 Ill. App. 3d 638, 344 N.E.2d 770.) The detriment to the defendants recited herein applies only to the relief requested for the 1982 election. Having concurred with the finding of the circuit court establishing the apportionment plan's noncompliance with the statute, we could not countenance any future elections pursuant to that map, elections for which the *laches* defense is inapplicable. Accordingly, we must remand this cause to the circuit court with directions to enter an order on its finding, with such order precluding the use of the June 29, 1981, apportionment plan and map for all elections held subsequent to November 2, 1982. We do not understand our directions to the circuit court, nor the order entered pursuant thereto, as invalidating the results of next month's election nor as impairing the authority of the board members therein elected. It is also our direction that upon remand, the circuit court should have all necessary authority to effectuate its order entered consistent with this opinion.

Based on the preceding analysis, and in keeping with the authori-

737

ties therein cited, we hold that the order of the Kankakee County Circuit Court should be affirmed as to the issue of *laches* raised by plaintiffs' appeal and remanded with directions as to other matters raised.

Affirmed in part and remanded with directions.

BARRY, P. J., and HEIPLE, J., concur.