FIRST DISTRICT
SIXTH DIVISION
MARCH 10, 2011

No. 1-11-0439

|  |  |  |
|---|---|---|
| LYONS MVP PARTY and its slate of candidates, PEDRO CASTRO, PATRICIA KRUEGER and MICHAEL J. SZYKOWNY, | ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Candidates-Appellants, | ) ) | No. 11 COEL 32 |
| v. | ) ) | Honorable |
| LYONS, ILLINOIS, MUNICIPAL OFFICERS ELECTORAL BOARD and its individual members, CHRISTOPHER GETTY, DAWN CAMPOS and TIMOTHY TVRDIK; the Objector PAUL MARCHIORI; and DAVID ORR in his official capacity as Cook County Clerk, | ) ) ) ) ) ) ) | Susan Fox Gillis, )       Judge Presiding. |
| Respondents-Appellees. | ) ) | |

JUSTICE ROBERT E. GORDON delivered the judgment of the court, with opinion. Presiding Justice Garcia and Justice McBride concurred in the judgment and opinion.

**OPINION**

Petitioners in this election case, the Lyons MVP Party and its slate of candidates for village trustee, Pedro Castro, Patricia Krueger, and Michael J. Szykowny, appeal an order by the circuit court of Cook County affirming the decision of respondent Lyons, Illinois, Municipal Officers Electoral Board (Board), to invalidate nomination papers filed by them for the April 5, 2011, Village of Lyons municipal election. The Board found the nomination papers invalid under section 10-5 of the Election Code (Code) (10 ILCS 5/10-5 (West 2008)), and ordered that petitioners' names not be printed on the ballot. We reverse.

BACKGROUND

The nomination petitions signed by the voters state that the candidates are nominated to run as candidates of the MVP Party, a new political party. However, the statements of candidacy filed by the candidates state the word "nonpartisan" near the top of the form. Respondent Paul Marchiori objected to the nomination papers on the ground that the papers did not comply with sections 10-4 and 10-5 of the Code.

The majority of the Board, comprised of respondents Christopher Getty and Dawn Campos, sustained the objection by a two to one vote as respondent Timothy Tvrdik dissented. The majority of the Board entered a consolidated decision including a finding that "[t]he petitions, which say the Candidates are running as candidates of the MVP Party and the statements of candidacy which say 'nonpartisan' at the top, are inconsistent and confusing and contradictory. Because the Candidates filed partisan petition sheets and nonpartisan statements of candidacy, there is no compliance with the requirements of the Election Code" (section 10-5).

Petitioners sought judicial review of the Board's decision in the circuit court of Cook County. The circuit court affirmed without a written decision. Petitioners appealed and we granted an expedited briefing schedule and respondent filed its brief and argument on March 4, 2011. Petitioners failed to file a reply brief.

ANALYSIS

The issue before this court is whether it is a violation of the Code to file nomination petitions stating that the candidates are nominated to run as candidates of the MVP Party, a new political party, when the statements of candidacy filed by the candidates state they are

2

No. 1-11-0439

nonpartisan.  The issue is one of statutory construction.

The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent.  *People ex rel. Birkett v. City of Chicago*, 202 Ill. 2d 36, 45 (2002).  The best indication of legislative intent is the plain and ordinary meaning of the statutory language. *Birkett*, 202 Ill. 2d at 45.  Where the language is clear and unambiguous, we must apply the statute without resort to other aids of statutory construction.  *Birkett*, 202 Ill. 2d at 45-46.  If the statutory language is ambiguous, we look to other sources to decide the legislature's intent. *Birkett*, 202 Ill. 2d at 46.  The construction of a statute is a question of law that is reviewed *de novo*.  *Birkett*, 202 Ill. 2d at 46; *McNamara v. Oak Lawn Municipal Officers Electoral Board*, 356 Ill. App. 3d 961, 964 (2005); *Cullerton v. Du Page County Officers Electoral Board*, 384 Ill. App. 3d 989, 991 (2008).

Section 10-5 of the Election Code reads in pertinent part:

"All petitions for nomination shall, besides containing the

names of candidates, specify as to each:

***

(2) The new political party, if any, represented,

expressed in not more than 5 words.  ***

***

[The statement of candidacy] shall set out the address of

such candidate, the office for which he is a candidate, shall state

that the candidate is qualified for the office specified and has filed

3

> (or will file before the close of the petition filing period) a statement of economic interests as required by the Illinois Governmental Ethics Act, shall request that the candidate's name be placed upon the official ballot and shall be subscribed and sworn to by such candidate ***."

Petitioners argue that the Code does not require a statement of candidacy form to mention any party affiliation at all; therefore, the objector has failed to establish any breach of statutory duty by the candidates. Respondent argues that this case is analogous to *Cullerton v. Du Page County Officers Electoral Board*, 384 Ill. App. 3d 989. The *Cullerton* case involved section 7-10 and is distinguishable from the case at bar. In *Cullerton*, the candidate attempted to run as the Democratic candidate for a legislative office, although he was secretly affiliated with and a primary voter of the Republican Party, and the court found his statement of candidacy false and disqualified his candidacy. The court's finding indicated fraud. In the case at bar, either the candidates were given a form for the statement of candidacy with the label "nonpartisan," or selected the wrong form. There was no showing here of any fraud, nor did the objector claim fraud.

In *McNamara v. Oak Lawn Municipal Officers Electoral Board*, 356 Ill. App. 3d 961, we reversed the Board and the circuit court when they found a joint nomination petition invalid under section 10-3 of the Code. Justice Robert Cahill authored a scholarly opinion that found that the Code allows independent candidates to file joint nomination papers as evidenced by the legislature's reference to candidates in the plural and the inclusion of the words "in the

4

aggregate." We held that section 10-3 of the Code does not contain mandatory language nor does it provide that compliance is essential to effect a valid nomination. In deciding whether the petitioners' noncompliance with section 10-3 was fatal to their nomination, we relied on *People ex rel. Meyer v. Gerner*, 35 Ill. 2d 33, 39 (1966).

In *Gerner*, our supreme court held:

> "Where a statute provides that an election shall be rendered
> void by failure of those involved in the election process to perform
> certain duties, the courts are bound to enforce it as mandatory.
> [Citations.] But, where the statute does not expressly declare its
> provisions to be mandatory or compliance therewith to be essential
> to its validity, the failure to strictly comply, in the absence of fraud
> or a showing that the merits of the election were affected thereby,
> is not fatal." *Gerner*, 35 Ill. 2d at 39.

In the case at bar, there is nothing in the statute that required the candidates to state party affiliation in their statement of candidacy. The form that stated "nonpartisan" should not have been in the statement, but its inclusion was not shown to be fraud, not was there any showing that the merits of the election were affected. Our courts have favored access and guard the right of voters to endorse and nominate the candidates of their choice unless candidates violate mandatory language of the Code, where compliance is essential to effect a valid nomination. *Lucas v. Lakin*, 175 Ill. 2d 166 (1997); *Welch v. Johnson*, 147 Ill. 2d 40, 56-57 (1992); *Anderson v. Schneider*, 67 Ill. 2d 165 (1977); *McNamara*, 356 Ill. App. 3d 961.

Respondent argues that the apparent contradiction between the candidates' statements of candidacy, which include a heading stating "nonpartisan," and their nominating petitions, which refer to them as members of the MVP Party, give rise to confusion over the true nature of the candidacies. Our supreme court introduced the concept of analyzing whether there is a "basis for confusion" in a candidate's nomination papers in the case of *Lewis v. Dunne*, 63 Ill. 2d 48 (1976). Like *Cullerton*, *Lewis* involved section 7-10. In *Lewis*, our supreme court held that a failure to specify the vacancy sought in the statement of candidacy did not render the candidate's nominating papers invalid because the vacancy was specified in the nominating petition. The court held that "[t]here was no conflict or inconsistency between the description of the office in the petitions signed by electors and the statement of candidacy, and in our opinion there was no basis for confusion as to the office for which the nominating papers were filed." *Lewis*, 63 Ill. 2d at 53. Since the *Lewis* decision, courts analyzing whether nominating papers complied with the Code have considered the presence of a "basis for confusion."

Like *Lewis*, most of the cases considering the question have been in the context of possible violations of section 7-10 and have involved the issue of whether the description of the office sought by the candidate is sufficient. However, the reasoning from those cases is instructive. Generally, courts have found that where the office specified in the nominating papers can only refer to one possible vacancy, there is no basis for confusion. See *Pascente v. County Officers Electoral Board of the County of Cook*, 373 Ill. App. 3d 871, 874-75 (2007); *Bryant v. Cook County Electoral Board*, 195 Ill. App. 3d 556, 557-59 (1990); *Stevenson v. County Officers Electoral Board*, 58 Ill. App. 3d 24, 27 (1978). In those cases, there is "no question as to the

6

office which [the candidate] was seeking." *Pascente*, 373 Ill. App. 3d at 875. However, where the office specified can refer to more than one vacancy, there is a basis for confusion. See *Salgado v. Marquez*, 356 Ill. App. 3d 1072, 1078 (2005); *Heabler v. Municipal Officers Electoral Board of the Village of Lakemoor*, 338 Ill. App. 3d 1059, 1063 (2003); *Zapolsky v. Cook County Officers Electoral Board*, 296 Ill. App. 3d 731, 735 (1998).

Additionally, in at least one case, the court has found that there is no compliance with section 7-10 where the error is on the nominating petition as opposed to the statement of candidacy because "[a] potential signatory to a nominating petition has the right to know the specific vacancy sought by the candidate so that the signatory may make an informed decision to sign the petition or support another candidate for the same vacancy." *Zapolsky*, 296 Ill. App. 3d at 734-35. Further, in at least one case, even a conflicting nominating petition and statement of candidacy was considered to substantially comply with section 7-10 because there was only one vacancy that the candidate could possibly have been seeking to fill. See *Sullivan v. County Officers Electoral Board*, 225 Ill. App. 3d 691, 693-94 (1992) (finding that the candidate must have been seeking office in York Township because Oak Brook Township did not exist).

The same analysis applies in the case at bar. Here, there was an inconsistency between the nominating petition and the statement of candidacy. Respondent seeks to use this inconsistency to demonstrate a basis for confusion. However, the language indicating "nonpartisan," which is the incorrect language, appeared on the statement of candidacy, not on the nominating petition. Thus, the voters signing the nominating petition were able to sign knowing the correct information: that the candidates were running as members of the MVP Party.

7

No. 1-11-0439

This is not a situation where the voters were unable to determine which party the candidates belonged to; that information is clear. Accordingly, there was no basis for confusion and the candidates should have been permitted to be placed on the ballot.

Finally, we address respondent's argument concerning *laches*. Respondent argues that petitioners are barred because their conduct throughout this appeal process constituted *laches*. Generally, *laches* is "such a neglect or omission to assert a right, taken in conjunction with a lapse of time of more or less duration, and other circumstances causing prejudice to an adverse party, as will operate to bar relief in equity." *Meyers v. Kissner*, 149 Ill. 2d 1, 12 (1992) (citing *Curtis v. Curtis*, 398 Ill. 442, 446 (1947)). In order to find *laches*, two elements must be satisfied: (1) lack of diligence by the party asserting the claim and (2) prejudice to the opposing party as a result of the delay. *Tully v. State*, 143 Ill. 2d 425, 432 (1991).

In the case at bar, petitioners timely filed their petition for judicial review and filed their notice of appeal eight days after the circuit court entered its decision, well within the 30-day limit imposed by Illinois Supreme Court Rule 303 (eff. May 30, 2008). Additionally, petitioners filed a motion to expedite the appeal, which we granted for good cause shown. See Ill. S. Ct. R. 311 (eff. Feb. 1, 1994) (for good cause shown, the reviewing court may place the case on an accelerated docket on its own motion or on the motion of any party). We granted petitioners' motion, meaning that there was good cause to expedite the appeal. Thus, if we agreed that petitioners were not timely in their appeal, we would have denied petitioners' motion to expedite the appeal because there would not have been good cause to expedite it.

Additionally, respondent did not cite any cases analogous to the situation at bar. All of

8

respondent's cases refer to timeliness in the context of the objector's initial challenge to the election or an appeal from the Board's decision. None refer to an appeal from the circuit court's decision. Moreover, the cases cited by respondent all involve time limits much longer than the eight days that passed prior to the notice of appeal. See *Thurston v. State Board of Elections*, 76 Ill. 2d 385 (1979) (delay of nearly four months); *Evers v. Collinsville Township*, 269 Ill. App. 3d 1069 (1995) (delay of nearly two years); *Martin v. Soucie*, 109 Ill. App. 3d 731 (1982) (delay of six months). We also note that this is not a case in which petitioners waited until after the general election to bring suit, which has also been held to be a justification for the application of *laches*. See *Thurston*, 76 Ill. 2d at 388-89 (plaintiffs knew of candidate's nomination before election, but did not file suit until after general election); *Martin*, 109 Ill. App. 3d at 732-33 (suit was filed on the last day to file nominating petitions and was heard after absentee voting had begun). Accordingly, we cannot find that petitioners have "slumbered on their rights," as respondent asserts.

We also do not find that respondent has shown that prejudice resulted from any delay. Respondent asserts that if the candidates are restored to the ballot, it would require the ballots to be reprinted. However, respondent does not claim that the result would have been any different had petitioners filed their notice of appeal on February 9, 2011, the date after the circuit court's decision was entered. In order for prejudice to have resulted from the delay, respondent would have needed to show that the ballots were printed between the date the notice of appeal should have been filed and the date that it was actually filed. Since respondent did not make such a claim, we cannot find prejudice. We find respondent's other claims of prejudice to be equally

lacking in merit. There is no reason why "early voters of the Village of Lyons" would be prejudiced by the delay, since early voting has not yet begun. Likewise, any further appellate rights of respondent can be attempted on an expedited basis, as was this appeal. Neither element of *laches* is present in the case at bar; therefore, we do not find petitioners' appeal barred by *laches*.

## CONCLUSION

For the reasons stated above, we reverse the Board and the circuit court and order petitioners' names to be placed on the ballot for election of trustee in Lyons.

Reversed with instructions.