# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Lenehan v. Township Officers Electoral Board*, 2013 IL App (1st) 130619

| | |
|---|---|
| Appellate Court Caption | MICHAEL LENEHAN, Plaintiff-Appellant, v. TOWNSHIP OFFICERS ELECTORAL BOARD OF SCHAUMBURG TOWNSHIP, its Members Mary Wrobleski, Chairperson, Timothy Heneghan and Ellen Raymond; TIMOTHY HENEGHAN, in His Official Capacity as Schaumburg Township Clerk; DAVID ORR, in His Official Capacity as Cook County Clerk; and CHANDRAKANT H. PANDYA, Defendants-Appellees.–ZUHAIR NUBANI, Plaintiff-Appellant, v. TOWNSHIP OFFICERS ELECTORAL BOARD OF SCHAUMBURG TOWNSHIP, its Members Mary Wrobleski, Chairperson, Timothy Heneghan and Ellen Raymond; TIMOTHY HENEGHAN, in His Official Capacity as Schaumburg Township Clerk; DAVID ORR, in His Official Capacity as Cook County Clerk; and CHANDRAKANT H. PANDYA, Defendants-Appellees.–CAROLYN A. QUINN, Plaintiff-Appellant, v. TOWNSHIP OFFICERS ELECTORAL BOARD OF SCHAUMBURG TOWNSHIP, its Members Mary Wrobleski, Chairperson, Timothy Heneghan and Ellen Raymond; TIMOTHY HENEGHAN, in His Official Capacity as Schaumburg Township Clerk; DAVID ORR, in His Official Capacity as Cook County Clerk; and CHANDRAKANT H. PANDYA, Defendants-Appellees.–MIKE MURRAY, Plaintiff-Apellant, v. TOWNSHIP OFFICERS ELECTORAL BOARD OF SCHAUMBURG TOWNSHIP, its Members Mary Wrobleski, Chairperson, Timothy Heneghan and Ellen Raymond; TIMOTHY HENEGHAN, in His Official Capacity as Schaumburg Township Clerk; DAVID ORR, in His Official Capacity as Cook County Clerk; and CHANDRAKANT H. PANDYA, Defendants-Appellees. |
| District & No. | First District, First Division<br>Docket No. 1-13-0619 |
| Filed | April 3, 2013 |

Held

(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*)

Defendant local electoral board's decision disqualifying the Democratic Party's candidates because the person who signed their nominating papers was not qualified to do so was reversed and the candidates were allowed to appear on the ballot, since the Township Code does not clearly state that the nomination papers must be signed by the chairman of the party's central committee to be valid, there was no allegation of fraud in connection with the party caucus that nominated the candidates, and the failure to strictly comply with the statutory requirement of "certification by the chairman" was of no consequence.

Decision Under Review

Appeal from the Circuit Court of Cook County, Nos. 13 COEL 28, 13 COEL 29, 13 COEL 30, 13 COEL 31; the Hon. Paul Karkula, Judge, presiding.

Judgment

Reversed.

Counsel on Appeal

Zuhair Nubani, of Schaumburg, for appellants.

Laduzinsky & Associates, P.C., of Chicago (Steven M. Laduzinsky, David J. Riski, and Tracy L. Brdar, of counsel), for appellee Chandrakant H. Pandya.

Storino, Ramello & Durkin, of Rosemont (Thomas M. Bastian, of counsel), for appellee Township Officers Electoral Board.

Anita M. Alvarez, State's Attorney, of Chicago (Marie D. Spicuzza, Assistant State's Attorney, of counsel), for appellee David Orr.

Panel

JUSTICE DELORT delivered the judgment of the court, with opinion.

Justices Rochford and Cunningham concurred in the judgment and opinion.

**OPINION**

¶ 1     We determine here whether to restore candidates who were disqualified by a local suburban electoral board to the April 9, 2013 consolidated election ballot. Because the

electoral board's removal of the candidates was in error, we issued a brief order on March 25, 2013 reversing the board and restoring the candidates to the ballot. This opinion explains our reasoning.

¶ 2 A local voter, Chandrakant H. Pandya (objector), filed an objection with the Schaumburg Township clerk challenging certain candidates' nominating papers for the April consolidated election pursuant to section 10-8 of the Election Code (10 ILCS 5/10-8 (West 2010)). The objection alleged that the candidates' nominating papers were invalid because the papers were not signed by the chairperson of the Schaumburg Township Democratic Central Committee. The Schaumburg Township Electoral Board (electoral board), consisting of incumbent local officials from a different political party than the candidates, and one public member appointed by the chief judge of the circuit court of Cook County, sustained the objection and removed the candidates' names from the ballot. The two local members voted to disqualify the candidates; the public member dissented.

¶ 3 The petitioners, Michael Lenehan, Zuhair Nubani, Carolyn A. Quinn, and Mike Murray (collectively the candidates), appealed that decision to the circuit court of Cook County by filing four petitions for judicial review (petitions) pursuant to section 10-10.1 of the Election Code (10 ILCS 5/10-10.1 (West 2010)). The trial court consolidated the four petitions and affirmed the electoral board's rulings, thus leaving the four candidates off the ballot. In this appeal of the four consolidated cases, the candidates contend that the electoral board and trial court erred by finding that Michael Cudzik lacked authority to sign the certification of nomination of the candidates. We reverse.

¶ 4                                    BACKGROUND

¶ 5 The pertinent facts are undisputed. On October 30, 2012, the Schaumburg Township clerk, following the requirements of section 45-10 of the Township Code (60 ILCS 1/45-10 (West 2010)), notified Schaumburg Township Democratic Committeeman Rocco Terranova that "each political party's Township Central Committee" must report the time and location of the party's township caucus to the Town Clerk." On November 5, 2012, Terranova duly notified the clerk, in writing, that the caucus would be held on December 4, 2012, at 7 p.m. at the Schaumburg Community Recreation Center, 505 N. Springinsguth Road, Schaumburg.

¶ 6 Two days later, on November 7, 2012, however, Terranova resigned as Schaumburg Township Democratic committeeman through a letter he sent to the chairman of the Cook County Democratic party. In this letter, Terranova purported to turn over his duties and responsibilities as committeeman to Michael Cudzik. The letter also states that the executive board of the Schaumburg Township Democratic Organization unanimously elected Cudzik to complete Terranova's term as committeeman. On December 3, 2012, the "Schaumburg Area Democrats" voted to designate Michael Cudzik as chairman of the caucus to be held the following day, December 4, 2012[1]. Schaumburg Area Democrats is technically a political

---

[1]State law authorizes township committeemen in Cook County to promulgate rules for the caucus, and to do so before the caucus is actually convened. However, these rules may be amended by a majority vote of those attending the caucus. 60 ILCS 5/45-15, 45-50(a) (West 2010).

committee established under article 9 of the Election Code (10 ILCS 5/9-1 *et seq.* (West 2010)). Notice to the public of the caucus was later duly published in a newspaper.

¶ 7 At the December 4 caucus, the four petitioners were all nominated as Democratic candidates for Schaumburg Township offices to be filled at the April 9, 2013 consolidated election. Michael Cudzik signed a certificate of nomination by caucus naming Michael Lenehan, Moe Patel, Mike Murray, Carolyn A. Quinn, and Zuhair Nubani as the Democratic candidates for various township offices nominated at the caucus pursuant to section 45-20 of the Township Code (60 ILCS 1/45-20 (West 2010)). Lenehan was nominated for highway commissioner; the other candidates were nominated for four township trustee positions. Michael Cudzik signed the certificate of nomination in his capacity as "presiding officer" of the caucus.

¶ 8 On January 3, 2013, Chandrakant H. Pandya filed objections to the nomination papers generated by the caucus. The objections stated that the candidates' nominating papers were invalid only because the certificate of nomination was not signed by the chairman of the township central committee as required by section 45-20(b) of the Township Code (60 ILCS 1/45-20(b) (West 2010))[2]. The candidates moved to strike and dismiss the objections, but the electoral board denied the motion. After hearing evidence, the electoral board found that Michael Cudzik was neither the Schaumburg Township Democratic committeeman nor properly appointed chairman of the caucus. The electoral board then voted to invalidate the nomination papers by a 2 to 1 vote. On January 25, 2013, the electoral board approved written decisions explaining its rationale.

¶ 9 On January 29, 2013, the candidates filed petitions for judicial review in the circuit court of Cook County. The petitions named the electoral board, all three of its members, the Cook County clerk, and the objector as respondents. On February 4, 2013, the trial court consolidated the petitions and assigned a judge to hear them on an expedited basis. The circuit court ordered the electoral board to file the administrative record by February 7, 2013 and set a briefing schedule for the parties to present their arguments on the merits of the petitions. On February 14, 2013, after hearing arguments by the parties, the circuit court entered an order finding: (i) that Michael Cudzik was not the Schaumburg Township Democratic committeeman, chairman of the township central committee, or chairman of the caucus; (ii) that Cudzik lacked authority to sign the certification of nomination of the candidates; and (iii) denying the petitions for judicial review.

¶ 10 Even though balloting for the April election was scheduled to begin on February 25,

---

[2]In Cook County, the "Township Central Committee" is actually not a committee at all, as it consists only of one person, the "elected or appointed" township committeeman, acting by himself. 60 ILCS 1/45-15 (West 2010). Township committeemen are elected only in Cook County. In other counties, each precinct elects a committeeman. 10 ILCS 5/7-7 (West 2010). In other counties, there is a "township central committee chairman," presumably elected by the various precinct committeemen, who is statutorily designated to perform the same caucus-related functions as township committeemen do in Cook County. 60 ILCS 1/45-15 (West 2010).

2013[3], the candidates waited until two days later, February 27, 2013, to even file a notice of appeal. The candidates filed the notice of appeal a full 13 days after they lost in the circuit court. Over two weeks later, on March 14, the candidates finally filed the record on appeal in this court, and they then asked–a full month after the circuit court had ruled–that this court hear the matter on an expedited basis. On March 15, 2013, this court allowed the motion and ordered a briefing schedule, under which the last brief would not be due until early April.

¶ 11    On March 18, 2013, the objector filed a motion to vacate the expedited briefing schedule and to dismiss the appeal. On March 19, 2013, we entered an order granting that motion in part, by vacating the March 15, 2013 briefing schedule but expediting it even further. We ordered the parties to file simultaneous memoranda in support of their respective positions on or before 10 a.m. on March 25, 2013. See Ill. S. Ct. R. 311(b) (eff. Feb. 26, 2010). We ordered that the objector's motion to dismiss be taken with the case, and noted that the case would be taken under advisement for ruling without oral argument.

¶ 12    On March 25, 2013, the parties submitted simultaneous memoranda in lieu of formal briefs. The same day, we entered an order denying the motion to dismiss the appeal, reversing the decision of the electoral board, and reversing the corresponding judgments of the circuit court denying the petitions for judicial review. We now issue this opinion explaining the basis for that ruling.

¶ 13                                          ANALYSIS
¶ 14                        I. Objector's Motion to Vacate and Dismiss
¶ 15    On March 18, 2013, the objector filed an emergency motion to vacate the court's March 15, 2013 briefing schedule order and to dismiss the appeal. The objector argued that he had insufficient time to respond to the candidates' motion for an expedited briefing schedule, that he had meritorious objections to that motion, and that the court should dismiss the candidates' appeal under the doctrine of *laches*. Had the court not acted on the motion for an expedited schedule so quickly, the objector indicated that he would have objected to any expedition of the schedule because of: (a) the delays between the date of the circuit court's final order, the filing of the notice of appeal, and the motion to expedite; (b) the candidates' failure to name all parties in the notice of appeal; (c) the candidates' failure to serve all necessary parties with the notice of appeal; and (d) the administrative burdens of pursuing an appeal so close to the election.

¶ 16    The objector claimed that the Cook County clerk already printed absentee ballots for the April 9, 2013 consolidated election, that absentee voting would begin March 15, 2013, that the Cook County clerk would print ballots for the April 9, 2013 election no later than March

_____

[3]State law required the Cook County clerk to have ballots "printed and available" for transmission to overseas voters by that date. 10 ILCS 5/16-5.01 (West 2010). The clerk was scheduled to begin grace period voting on March 13, absentee voting on March 15, and early voting on March 25. 10 ILCS 5/5-50, 19-4, 19A-15 (West 2010). Presumably, the clerk would have to undertake considerable efforts well in advance of those dates to ensure that correct ballots would be printed and available on time.

19, 2013, and that the candidates' reply brief would not have been due until a mere five days before the subject election, rendering any effective relief impossible.

¶ 17    Illinois Supreme Court Rule 311(b) provides:

"Any time after the docketing statement is filed in the reviewing court, the court, on its own motion, or on the motion of any party, for good cause shown, may place the case on an accelerated docket. The motion shall be supported by an affidavit stating reasons why the appeal should be expedited. If warranted by the circumstances, the court may enter an order accepting a supporting record prepared pursuant to Rule 328, consisting of those lower court pleadings, reports of proceedings or other materials that will fully present the issues. In its discretion the court may accept memoranda in lieu of formal briefs. The court may then enter an order setting forth an expedited schedule for the disposition of the appeal." Ill. S. Ct. R. 311(b) (eff. Feb. 26, 2010).

¶ 18    To determine whether expedited consideration of an appeal is necessary and appropriate, the court considers whether the matter under review is likely to have an immediate and irreversible impact on the parties without expedited consideration, and whether the court's judgment has the potential for any remedial effect without expedited consideration. Holding an election without the correct candidates on the ballot would be highly detrimental to the public interest, and it is especially difficult to fashion an appropriate remedy if candidates are restored to the ballot after the subject election has been held. Accordingly, this court, and our supreme court, routinely grant expedited schedules on ballot access cases. See, *e.g.*, *People ex rel. Chicago Bar Ass'n v. State Board of Elections*, 136 Ill. 2d 513, 518 (1990); *Lyons MVP Party v. Lyons, Illinois, Municipal Officers Electoral Board*, 407 Ill. App. 3d 1004, 1005 (2011); *Benjamin v. Board of Election Commissioners*, 122 Ill. App. 3d 693, 695 (1984); *Stout v. Black*, 8 Ill. App. 3d 167, 168 n.1 (1972).

¶ 19    All that being said, we do not disagree that the candidates should have acted much more quickly to protect their rights. Just because it is metaphysically possible for a court to resolve a complicated ballot access case before a particular election hardly means that it is practical or judicially efficient for the court to do so, nor that the court can duly and fully consider the issues under such constraints. The customary practice in election cases is to file the notice of appeal and docketing statement within a day or two of the circuit court's ruling, along with an opening brief and motion for accelerated docket pursuant to Supreme Court Rule 311(b). Because of the looming ballot printing and administrative deadlines, even candidates who have been removed from the ballot for specious reasons run the risk of forfeiting their claims if they do not seek immediate relief.

¶ 20    Mindful of the need to resolve the case quickly, we entered an order on March 19 vacating the March 15 briefing schedule, but then accelerated it to require the parties to file simultaneous memoranda in lieu of formal briefs by March 25, 2013, 14 days prior to the election. To address the notice issues complained of by the objector, we ordered counsel for the objector, the electoral board, and the Cook County clerk to file an appearance by the close of business on March 20, 2013 and to serve their appearances on counsel for all parties.

¶ 21    We now deny the remainder of the objector's motion, which sought to dismiss the case entirely.

¶ 22                        A. Deficiencies in the Notice of Appeal

¶ 23    The failure to name the electoral board and the Cook County clerk as parties in the notice of appeal is not a ground for dismissal. "Illinois courts do not have general jurisdiction over election cases, but may only review them pursuant to statute, namely, sections 10-10 and 10-10.1 of the Code." *Rivera v. City of Chicago Electoral Board*, 2011 IL App (1st) 110283, ¶ 20. The Election Code provides:

> "[A] candidate or objector aggrieved by the decision of an electoral board may secure judicial review of such decision in the circuit court of the county in which the hearing of the electoral board was held. The party seeking judicial review must file a petition with the clerk of the court and must serve a copy of the petition upon the electoral board and other parties to the proceeding by registered or certified mail within 5 days after service of the decision of the electoral board as provided in Section 10-10." 10 ILCS 5/10-10.1 (West 2010).

¶ 24    "[T]he requirements mandated upon the parties as provided in these sections are jurisdictional requirements that must be followed." *Rivera*, 2011 IL App (1st) 110283, ¶ 20. The objector contends that the individual members of the board and the Cook County clerk were parties in the circuit court and, therefore, had to be specifically listed, by their individual names, in the notice of appeal. This court's jurisdiction to review the circuit court's judgment with regard to the board's decision does not derive from the statute, but from the Illinois Constitution. *Havens v. Miller*, 102 Ill. App. 3d 558, 563 (1981). "Every final judgment of a circuit court in a civil case is appealable as of right. The appeal is initiated by filing a notice of appeal. No other step is jurisdictional. An appeal is a continuation of the proceeding." Ill. S. Ct. R. 301 (eff. Feb. 1, 1994).

¶ 25    The objector does not contend that the candidates failed to comply with section 10-10.1 of the Election Code (10 ILCS 5/10-10.1 (West 2010)) in filing their petitions for judicial review in the circuit court, or that the judgments of the circuit court denying appellants' petitions for judicial review were not final judgments. We do not find the contents of the notice of appeal–the only jurisdictional step required to invoke this court's authority–to be fatally deficient. Rule 303(b) prescribes the contents of the notice of appeal. It requires the notice of appeal to name and to designate the parties in the same manner as in the circuit court adding the designation "appellant" or "appellee." Ill. S. Ct. R. 303(b)(1)(ii) (eff. May 30, 2008). Even so, our supreme court has found that "while a notice of appeal is jurisdictional, it is generally accepted that such a notice is to be construed liberally." *People v. Smith*, 228 Ill. 2d 95, 104 (2008).

¶ 26    "The purpose of a notice of appeal is to inform the prevailing party in the trial court that the other party seeks review of the judgment. [Citations.] 'Accordingly, notice should be considered as a whole and will be deemed sufficient to confer jurisdiction on an appellate court when it fairly and adequately sets out the judgment complained of and the relief sought, thus advising the successful litigant of the nature of the appeal.' [Citation.] 'Where the deficiency in notice is one of form, rather than substance, and the appellee is not prejudiced, the failure to comply strictly with the form of notice is not fatal.' [Citation.]" *People v. Smith*, 228 Ill. 2d 95, 104-05 (2008).

¶ 27    Moreover:

"The failure to serve a copy of the notice of appeal upon an opposing party does not deprive the appellate court of jurisdiction because the only jurisdictional step in appealing a final judgment is the filing of the notice of appeal. [Citation.] An appeal will not be dismissed on the basis that the opposing party was not served with a copy of the notice of appeal unless there was evidence of prejudice to that party. [Citation.] A party is not prejudiced by the failure to serve on her a copy of the notice of appeal if the party could file appellate briefs and argue orally. [Citation.]" *Simmons v. Chicago Housing Authority*, 267 Ill. App. 3d 545, 551 (1994).

¶ 28    Thus, any failure to serve the individual members of the electoral board or the Cook County clerk did not deprive this court of jurisdiction of the appeal. The failure to individually name the members of the board in the notice of appeal is a defect in form, not in content[4]. The notice is amply sufficient to inform the parties of the judgment complained of, the relief sought, or the nature of the appeal. The designation of the "Township Officers Electoral Board of Schaumburg Township" in the notice of appeal is sufficient to notify the board as a body, as well as its individual members, the objector, and any other party that the candidates were seeking review of the circuit court's judgment denying their petitions for judicial review of the decision of the electoral board. The objector was a party to the proceedings in the circuit court and the candidates appealed that court's judgment to this court. The purpose of the notice of appeal is to provide appellee a fair opportunity to participate in this court's adjudication of the appeal. That purpose was achieved here.

¶ 29    The failure to serve the notice of appeal is a bit more problematic, but not so much so that it undermines the appellate process. The candidates' failure to more promptly serve appellee with the notice of appeal, however, did not unduly prejudice the objector. Although the objector did not have an opportunity to respond to the candidates' motion before we entered the first briefing schedule order on March 15, 2013, we vacated that order three days later based, in part, on the objector's motion to vacate. The court duly considered, but rejected, the arguments the objector made in opposition to expediting the appeal. The fact that the objector has fully argued this case demonstrates that he suffered no prejudice from any delays in the filing of the appeal or from any defects in the contents or service of the notice of appeal. *Simmons*, 267 Ill. App. 3d at 551 ("even if plaintiff did not receive notice of defendant's appeal until December, the fact that plaintiff filed its brief and orally argued this case reveals that plaintiff suffered no prejudice"). We strongly admonish future election litigants of the need to pursue their appeals not only as speedily as possible, but with punctilious attention to the details of service and notice. The failure to do so here, however, was not fatal.

---

[4]In contrast, the requirements for naming and serving the members of the electoral board as respondents in a petition for judicial review are mandatory and strictly applied. *Russ v. Hoffman*, 288 Ill. App. 3d 281, 283 (1997); *Allord v. Municipal Officers Electoral Board*, 288 Ill. App. 3d 897, 904 (1997).

¶ 30                                         B. *Laches*

¶ 31       The objector also contends the appeal should be dismissed under the doctrine of *laches*. Generally, *laches* is "such a neglect or omission to assert a right, taken in conjunction with a lapse of time of more or less duration, and other circumstances causing prejudice to an adverse party, as will operate to bar relief in equity." *Meyers v. Kissner*, 149 Ill. 2d 1, 12 (1992). To find *laches*, "two elements must be satisfied: (1) lack of diligence by the party asserting the claim and (2) prejudice to the opposing party as a result of the delay." *Lyons MVP Party v. Lyons, Illinois, Municipal Officers Electoral Board*, 407 Ill. App. 3d 1004, 1008-09 (2011). The objector claims that it is unfair and prejudicial for him to respond to this appeal on the eve of the election and that the relief sought may place an unbearable burden on the Cook County clerk.

¶ 32       In this case, the electoral board issued its decision on January 25, 2013. The candidates, represented by counsel, sought review in the circuit court within four days by filing their petitions for judicial review on January 29, 2013. The circuit court issued a final order on February 14, 2013, but 13 days passed before they filed a notice of appeal on February 27, 2013.

¶ 33       Nonetheless, the objector has not been prejudiced in his ability to respond to this appeal. The case involves a single legal issue–the validity of Cudzik's signature on the certification of nomination. The parties are quite familiar with the sparse case law on the issue and they argued it *ad nauseam* in the tribunals below. The effort necessary to repackage those arguments for our appellate review was undoubtedly fairly minimal.

¶ 34       The objector's *laches* argument gives us the opportunity to analyze the interaction between a court hearing a last-minute ballot access case and the administrative exigencies created by orders in such cases. One might presume that the election date of April 9, 2013 is the only appropriate benchmark for assessing the timeliness of certain actions necessary for resolution of this case. But, as we noted earlier, merely because it is possible to resolve a case with a day or two's notice does not mean it should be done with such haste, or that the election authority can meaningfully implement such a late order. In addition, "election day" is now a month long. As we noted above, overseas voting started on February 25. On March 25, 15 days before election day, this court issued its order reversing the judgment of the circuit court. The order was released in the afternoon of the day that early voting began. Our order recognized that the Cook County clerk would be required to take certain steps to implement it, and we directed the clerk to take such steps as were "administratively reasonable" to do. In response to that order, the Cook County clerk did not file anything with this court indicating practical difficulties with implementing the order, although the clerk is a party to the case and had the opportunity to do so by filing a memorandum on the expedited schedule we established. We recognized that some early votes and overseas votes might have already been cast.

¶ 35       We also recognize that the practical ability of local election officials to implement last-minute ballot-change orders has greatly changed in recent years. Punchcard ballots, which

owe their demise to the 2000 Florida "hanging chad" debacle[5], were relatively easy to modify. Under the punchcard system, an election authority aware of pending litigation could leave a candidate's name off of the printed ballot page but leave stylus holes open in the apparatus to accommodate votes for the missing candidate. If the candidate was added to the ballot, stickers bearing her name, aligned to the extra hole, could easily be placed on the apparatus. Because each precinct was only equipped with a few such devices, the modification could be made fairly easily. The punchcard ballots themselves bore hundreds of standard punch positions and were generic in form. They needed no modification whatsoever. See generally Mathias W. Delort & Keri-Lyn J. Krafthefer, *Local Governmental Elections*, in Election Law §§ 12.49, 12.50 (Ill. Inst. for Cont. Legal Educ. 2012).

¶ 36    However, most election authorities in Illinois, including the Cook County clerk, now use optical scan ballots, which are specifically printed in countless "ballot styles," customized to the precise jurisdictions and races to be voted on by each voter. Cook County Clerk Election Judge Manual 2013, at 41, *available at* http://www.cookcountyclerk.com/elections/DocumentLibrary/EJ%20Manual%20-%202013.pdf (last visited Mar. 29, 2013) (hereinafter Judges Manual). Much like a dollar-bill-changing machine will not accept wrinkled currency, these ballots cannot be modified on their face by adding stickers, because the sticker changes the thickness of the paper and causes the counting machine to reject the ballot. Accordingly, when a court changes a ballot configuration late in the process, the election authority incurs significant costs for reprinting the entire lot of ballots. If the change occurs too late in the process, many voters have already cast early votes, and the ballots have been distributed and locked in transport cases distributed far and wide to various polling places. See generally Cook County Clerk Equipment Manager Handbook, *available at* http://www.cookcountyclerk.com/elections/DocumentLibrary/EM%20Handbook.pdf (last visited Mar. 29, 2013). Our local election authorities also use touch screen devices allowing voters to cast their votes electronically. Judges Manual, *supra*, at 16. While these devices can be reprogrammed to display newly added candidates' names, the machines are not quite in as widespread use as the paper ballots. Judges Manual, *supra*, at 21 (showing suggested configuration of polling place).

¶ 37    We note all this to indicate that the timing of this case was fortuitous–we were able to restore the candidates to the ballot on the first day of early voting. While this undoubtedly inconvenienced the election authority, it was early enough that the election day paper ballots could be reprinted in time for election day. Had the candidates delayed much further in pursuing their remedies, the objector's *laches* argument would have been more compelling. Case law teaches that an appeal of a decision of an electoral board can be barred by *laches*. See generally *Tully v. State*, 143 Ill. 2d 425, 434 (1991); *Martin v. Soucie*, 109 Ill. App. 3d 731, 732-33 (1982) (affirming circuit court judgment that relief sought for November 2, 1982

---

[5]The United States Supreme Court ruling in *Bush v. Gore*, 531 U.S. 98, 106 (2000), precipitated the enactment of the Help America Vote Act of 2002, Pub. L. No. 107-252, 116 Stat. 1666 (codified at 42 U.S.C. § 15301 *et seq.* (2002)), which in turn made it administratively unfeasible for most jurisdictions to use punch card ballots.

election was barred by *laches* where lawsuit challenging apportionment map governing county board members was filed on last day for filing nominating petitions for March primary and candidates had filed their petitions as candidates in specifically numbered districts, absentee ballots were already being printed, and programming of voting machines had been accomplished). In *Martin*, the court noted that when the circuit court found that the 6-month delay in that case was unreasonable, "16 of the 39 days available to absentee voters in the primary election had already passed." *Martin*, 109 Ill. App. 3d at 732. Nonetheless, we find that the appeal is not barred by *laches*.

¶ 38                    II. Decision of the Electoral Board

¶ 39        We then turn to the merits of the matter before us. Judicial review of a decision of an electoral board is governed by section 10-10.1 of the Election Code. These proceedings are in the nature of administrative review. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008). Because the appeal is in the nature of administrative review, the standard of review depends on what is in dispute: the facts, the law, or a mixed question of fact and law. *Cinkus*, 228 Ill. 2d at 210. The pertinent facts of this case are straightforward and not in dispute. Here, the issue is whether, given those facts, the electoral board correctly concluded that the certification of nomination was sufficient under controlling law to permit the candidates' names to appear on the ballot for the April 9, 2013 consolidated election. Our supreme court has held that where the historical facts are admitted or established, but there is a dispute as to whether the governing legal provisions were interpreted correctly by the administrative body, the case presents a purely legal question for which our review is *de novo*. *Hossfeld v. Illinois State Board of Elections*, 238 Ill. 2d 418, 423 (2010). This is such a case, and our review is *de novo*, a standard which is "independent and not deferential." *Hossfeld*, 238 Ill. 2d at 423.

¶ 40                         A. Objector's Standing

¶ 41        First, the candidates present an issue regarding the objector's standing to object to the candidates' nominating papers. They contend that the objector should not be allowed to object because the objector did not participate at the caucus and is not a member of the local Democratic party. This argument is completely meritless. The applicable statute allows *any* "legal voter of the political subdivision or district in which the candidate *** is to be voted on" to file objections to the certificate of nomination. 10 ILCS 5/10-8 (West 2010). There is no dispute that the objector is such a legal voter.

¶ 42                   B. Validity of the Certificate of Nomination

¶ 43        Section 45-20 of the Township Code requires "[t]he chairman of the township central committee [to], not more than 113 nor less than 106 days before the township election, file nomination papers as provided in this Section." 60 ILCS 1/45-20 (West Supp. 2011). The parties debate whether Cudzik was, or even could be, the chair of the township central committee, and whether he was appointed township committeeman. The objector contends that the electoral board "correctly interpreted the Township Code and the Election Code and

determined that Terranova, not Cudzik, was the chairman of the Schaumburg Township Central Committee." The objector relies on a harmonious reading of section 45-15(ii) of the Township Code (60 ILCS 1/45-15(ii) (West 2010)) and section 7-8(b) of the Election Code (10 ILCS 5/7-8(b) (West 2010)). He argues that because Schaumburg Township is in a county of 3 million or more, the township central committee consists *only* of "the elected or appointed township committeeman of each established political party" (60 ILCS 1/45-15(ii) (West 2010)), and there is only one elected or appointed township committeeman (10 ILCS 5/7-8(b) (West 2010)). Therefore, the objector argues, although without citation to authority, that the chairman of the township central committee *must* be a member of the township central committee, and therefore must also be the appointed or elected township committeeman, which Cudzik, he claims, was not. More to the point, the objector also argues, with some accuracy, that there "is no Illinois statue or case law that authorizes a Township Committeeman *** to appoint a successor once the office of Township Committeeman becomes vacant." True enough–although Illinois law vests party committeemen with significant authority, such as to appoint persons to fill vacancies in the General Assembly[6]–there is no statutory provision addressing how to fill a vacancy in the office of township committeeman. See Lisa Marie Raucci & Andrew M. Raucci, *Vacancies in Office and Vacancies in Nomination*, in Election Law § 4.50 at 14-50 (Ill. Inst. for Cont. Legal Educ. 2012) ("The law is silent with regard to vacancies in the offices of Cook County ward and township committeemen, but it is generally accepted that they are filled by the county central committee.") . The rules of the Cook County Democratic Party, admitted into evidence below, state that the Cook County Democratic central committee has the authority to fill vacancies in the office of ward and township committeeman. It is undisputed that the county central committee had not done so by the time the caucus was held. Accordingly, the objector contends that because there was no "elected or appointed" Schaumburg Township Democratic committeeman serving on the statutory caucus day, the Democratic Party simply forfeited its right to nominate any candidates in the April consolidated election.

¶ 44    The candidates argue this analysis is incorrect. They concede that Cudzik was not properly appointed as township committeeman, but that we do not need to decide whether the electoral board's determination in that regard was correct. The fact that Terranova passed the baton to Cudzik, so to speak, is helpful but not dispositive. The undisputed facts are that the candidates were all nominated as candidates for various Schaumburg Township offices to be filled at the April 9, 2013 consolidated election at a properly convened caucus of the Democratic voters of Schaumburg Township pursuant to section 45-10 of the Township Code (60 ILCS 1/45-10 (West 2010)). There is no dispute here that the caucus did, in fact, nominate the candidates. *Cf. McCarthy v. Streit*, 182 Ill. App. 3d 1026 (1989) (concerning dispute over which candidates received more votes at the caucus). There is also no dispute here that any other Democratic caucus convened at the designated time, date or place, or that any other caucus met which nominated a different slate of candidates.

¶ 45    The caucus is the equivalent of a primary election, so in the absence of fraud or mistake,

_____

[6]See *Kluk v. Lang*, 125 Ill. 2d 306 (1988).

its nomination of candidates should be given the same level of credence as the results of a primary election. This relationship is illustrated by the fact that in Cook County, a township committeeman can opt to eliminate the caucus and have his party nominate candidates for township offices by a governmentally financed primary election. 60 ILCS 1/45-55 (West 2010). While the caucus is technically an internal political party gathering, the caucus is stringently regulated by state statute and the cost of holding the caucus is borne by the township government. 60 ILCS 1/45-10, 45-50 (West 2010). By way of analogy, no one would credibly argue that if Cook County Clerk David Orr suddenly left office the day before the March 2012 general primary election, and the county board was unable to convene soon enough to appoint his replacement, that the election administered by Orr's staff would somehow be a nullity.

¶ 46    The parties have focused almost exclusively on Cudzik's status as township committeeman or chairman of the township central committee. The focus of our inquiry, though, is on the propriety of removing the candidates, because it is the rights of the voters which are of paramount concern. The effect of the board's decision is undoubtedly to deprive the voters who participated in the Schaumburg Township Democratic caucus, and those who did not but wish to vote in April for those candidates, of their right to nominate and to vote for the candidates of their choice. The sole reason for depriving those voters of their choice of candidates is the decision of the elected township committeeman to resign and the subsequent failure to secure a proper replacement before the caucus date. This reason provides no valid basis to vitiate the voters' rights.

¶ 47    In *People ex rel. Harris v. Powell*, 35 Ill. 2d 384 (1966), our supreme court addressed a *mandamus* action arising from "the failure of party officials to comply with the Election Code in connection with the certification of various candidates for offices of their parties." *Harris*, 35 Ill. 2d at 385. In that year, there were numerous administrative problems which resulted in challenged nomination papers. The facts of *Harris* and this case are similar in that both involve a failure to comply with statutory guidelines for the nomination of candidates for office. In *Harris*, the chairmen of various county central Democratic committees issued calls for nominating conventions, the conventions were held, and the petitioners in that case were nominated as Democratic candidates to run on the general election ballot. The failure of compliance in *Harris* was arguably more egregious in that it involved a complete failure to act rather than a defect resulting from the wrong person acting.

¶ 48    In *Harris*, party officials failed to file the call of the convention in the office of the Secretary of State as required by the Election Code. *Harris*, 35 Ill. 2d at 386. Despite the absence of even a failed attempt at compliance with the statutory requirement at issue, which is not the situation presented to this court, our supreme court ordered the Secretary of State to certify the petitioner in *Harris* as a candidate. *Harris*, 35 Ill. 2d at 388. The *Harris* court found that "the failure to strictly comply with the several sections of the Election Code did not involve fraud, the nomination of the petitioner was not questioned, and there is no claim that the merits of the election will be adversely affected or that the election officials cannot comply with their statutory duties. Under these circumstances, we are of the opinion that the statutory direction for the advance filing of the call is directory, and that failure to file the call did not invalidate the nomination of petitioner by the convention." *Harris*, 35 Ill. 2d at 387.

¶ 49    The *Harris* court recognized the need to protect the voters' rights in the face of "laxity and carelessness of party officials in the carrying out of their statutory duties." *Harris*, 35 Ill. 2d at 387. "[I]t would be unfair to their political parties to let the elections go by default. Furthermore *** it would be most unfair to the nominees of the respective conventions to be denied a place on the ballot although it was the will of their parties, expressed through their conventions, that the petitioners be candidates." *Harris*, 35 Ill. 2d at 387-88. Similarly, in this case, there is no dispute that it was the will of the party, expressed through their caucus, to nominate the four candidates. Terranova and Cudzik at least attempted to comply with the statute, whereas in *Harris*, the party officials completely failed to carry out one of their statutory duties. The carelessness in this case does not rise to a level that " 'should vitiate the ballot or proceeding in question.' " *Id*. at 387 (quoting *Hester v. Kamykowski*, 13 Ill. 2d 481, 485 (1958)).

¶ 50    Moreover, if it can be reasonably avoided, the voters' rights should not be abrogated by a vacancy in an office due to resignation. See *Gates v. East Eldorado*, 54 Ill. App. 3d 293, 296 (1977) ("public convenience shall not suffer from a vacancy in a public office"). "The Constitution of Illinois contains no express denial of the right of a public officer to resign, although it does provide that all officers shall hold their offices until their successors shall have qualified. These provisions mark the intention and policy of the law to be that the public convenience shall not suffer from a vacancy. It is the public convenience, not the private ends of some particular individual or group, which is to be served." *Swain v. County of Winnebago*, 111 Ill. App. 2d 458, 469 (1969). While we recognize that committeemen are party, not public, officers, the same principles apply because the committeeman here is exercising a specific public function authorized by statute. *See Kluk v. Lang*, 125 Ill. 2d 306 (1988).

¶ 51    A case which the electoral board majority struggled mightily to distinguish is *Moon v. Rolson*, 189 Ill. App. 3d 262 (1989). The pertinent facts in *Moon* are uncannily similar to those at issue here. The facts in *Moon* showed that after Leyden Township Republican Committeeman Elmer Conti died on January 4, 1988, the Cook County Republican party appointed Donald E. Stephens as Republican committeeman of Leyden Township. On January 6, 1989, Stephens himself suffered congestive heart failure and was hospitalized. Three days later, Stephens signed a document appointing Angelo Saviano to replace him as chairman for the party caucus to be held the following day. When Stephens became ill, Saviano was appointed chairman to execute all necessary documents and to preside at the party caucus being held on January 10, 1989. On January 10, 1989, Saviano presided at the caucus. Saviano, not Stephens, then signed the certificate of nominations resulting from the caucus. The *Moon* court rejected the same challenge made here–that the certificate was invalid because it was not signed by the elected committeeman–holding:

> "[S]ection 10-1 of the Election Code requires the presiding officer and secretary of the caucus to certify nomination papers under oath. The nomination papers filed herein satisfied that statutory requirement, in that they were signed under oath by the presiding officer and secretary of the caucus and filed with the township clerk. Further, under the circumstances, the appointment of Saviano as chairman and committeeman shows that there was substantial compliance with the requirements of *** the Township Law." *Id.*

-14-

at 266.

¶ 52    Like the *Moon* court, we also specifically note that section 10-1 of the Election Code (10 ILCS 5/10-1 (West 2010)) allows the certificate of nomination to be signed by the "presiding officer" of the caucus, leading to the conclusion that, depending on the underlying facts, someone other than the committeeman might validly sign the certificate.

¶ 53    Further, the electoral board's decision reflects an improper intrusion into political parties' right to freedom of association. The candidates' political party met in a caucus convened pursuant to statute. There is no evidence in the record that the members attending the caucus *did not* agree that Cudzik would serve as their chair, nor that someone else should certify the candidates nominated at that caucus on their behalf. It is entirely possible for a caucus of this nature to designate someone other than the elected committeeman to be the caucus chair. See State of Illinois Township Caucus Guide 2013, at 7, *available at* http://www.elections.il.gov/Downloads/ElectionInformation/PDF/2013TownshipCaucus Guide.pdf (last visited Mar. 29, 2013) (noting that the "chairman or presiding officer" announces the method of voting at the caucus); see also *Du Page County Election Comm'n v. State Board of Elections*, 345 Ill. App. 3d 200, 210 (2003) (holding that deference must be given to administrative agency's interpretation of its own statute).

¶ 54    Neither section 45-15 nor section 45-20 of the Township Code imposes any explicit restriction on who may serve as chairman of the township central committee. The objectors' narrow reading of the statute creates potential constitutional problems. "It is well settled that partisan political organizations enjoy freedom of association protected by the First and Fourteenth Amendments." *Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214, 224 (1989). "Freedom of association also encompasses a political party's decisions about the identity of, and the process for electing, its leaders." *Eu*, 489 U.S. at 229. In *Eu*, the United States Supreme Court examined California laws that dictated the organization and composition of governing bodies of political parties, limited the term of office of a party chair, and required that the chair rotate between residents of northern and southern California. *Eu*, 489 U.S. at 216. The Court held that the laws at issue directly implicated the associational rights of political parties and their members by limiting a political party's "discretion in how to organize itself, conduct its affairs, and select its leaders." *Eu*, 489 U.S. at 229-30. Therefore, the laws could only stand if they served a compelling state interest. *Id*. at 231. The Court recognized that a "State indisputably has a compelling interest in preserving the integrity of its election process. [Citation.] Toward that end, a State may enact laws that interfere with a party's internal affairs when necessary to ensure that elections are fair and honest. [Citation.]" *Eu*, 489 U.S. at 231. But "a State cannot justify regulating a party's internal affairs without showing that such regulation is necessary to ensure an election that is orderly and fair." *Eu*, 489 U.S. at 233. The requirement that the party notify the township clerk of the time and place of the party's caucus ensures that the selection process at the caucus is fair and open to all members of the party. However, the selection of the chair of that caucus is not a matter that requires meticulous regulation to preserve the integrity of the process. See *Eu*, 489 U.S. at 232. Where even the objector admits there would be no dispute as to the results of the caucus beyond the question of Cudzik's status as chair, this "is not a case where intervention is necessary to prevent the derogation of the civil rights of

-15-

party adherents." *Eu*, 489 U.S. at 232. Therefore, the electoral board's overly strict determination as to who could certify the nominees chosen at the Schaumburg Township Democratic caucus was an improper infringement on the party's first amendment rights.

¶ 55    Our supreme court has continued to recognize a "need to tread cautiously when construing statutory language which restricts the people's right to endorse and nominate the candidate of their choice." *Lucas v. Lakin*, 175 Ill. 2d 166, 176 (1997). The right of the voters to nominate the candidate of their choice is directly at issue in this case and is of paramount public importance.

¶ 56    For example, in *McNamara v. Oak Lawn Municipal Officers Electoral Board*, 356 Ill. App. 3d 961 (2005), independent candidates for village president and village clerk filed joint nomination papers. *McNamara*, 356 Ill. App. 3d at 963. An objection to the nomination papers asserted the papers did not comply with section 10-3 of the Election Code (10 ILCS 5/10-3 (West 2002)), which requires independent candidates to file individual nomination papers. *McNamara*, 356 Ill. App. 3d at 964-65 (quoting 10 ILCS 5/10-3 (West 2002)). The *McNamara* court *agreed*, and held that the candidates had *not* complied with section 10-3. *McNamara*, 356 Ill. App. 3d at 965. But the court's inquiry did not end there. The court found that it "must decide whether petitioners' noncompliance with section 10-3 compels striking them from the ballot." *Id*. at 965. The *McNamara* court was guided by *People ex rel. Meyer v. Kerner*, 35 Ill. 2d 33, 39 (1966), where our supreme court held:

> " 'Where a statute provides that an election shall be rendered void by failure of those involved in the election process to perform certain duties, the courts are bound to enforce it as mandatory. [Citations.] But, where the statute does not expressly declare its provisions to be mandatory or compliance therewith to be essential to its validity, the failure to strictly comply, in the absence of fraud or a showing that the merits of the election were affected thereby, is not fatal.' " *McNamara*, 356 Ill. App. 3d at 965-66 (quoting *Kerner*, 35 Ill. 2d at 39).

¶ 57    The objector in *McNamara* argued that the candidates' petitions violated section 10-4 of the Election Code (10 ILCS 5/10-4 (West 2002)), which "requires that all petitions for nomination under Article 10 of the Election Code comply with certain authenticity, formatting and stylistic specifications." *McNamara*, 356 Ill. App. 3d at 965 (citing 10 ILCS 5/10-4 (West 2002)). The *McNamara* court examined section 10-4 and found that it contains a penalty for a violation of that section, but the penalty only applies to a violation of section 10-4. The candidates in *McNamara* had violated section 10-3, and the court found that "[s]ection 10-3 does not contain mandatory language, nor does it provide that compliance is essential to effect a valid nomination." *McNamara*, 356 Ill. App. 3d at 966. The court noted that section 10-3 uses the word "may" in describing how nominations may be made. Section 45-20 of the Township Code, which is the provision at issue in this case, states that the chairman of the township central committee "shall" file nomination papers consisting of a certification by the chairman of the names all candidates for office in the township nominated at the caucus. 60 ILCS 1/45-20 (West 2010). However, that distinction does not require a different result than that in *McNamara*. The *McNamara* court went on to also hold that "section 10-3 does not provide that an election will be rendered void by failure of those involved in the election process to perform according to its terms. [Citations.] Accordingly,

-16-

even if we were to find section 10-3 mandatory rather than directory, compliance therewith is not essential to the validity of a nomination." *McNamara*, 356 Ill. App. 3d at 966.

¶ 58 Nothing in section 45-20 of the Township Code provides a clear statement of legislative intent that strict compliance with the "certification by the chairman" requirement is essential to the validity of the nomination at the caucus. Here, as in *McNamara*, there is no allegation of fraud in the caucus or that the caucus results were affected by the fact Cudzik is not the township committeeman. In fact, counsel for the objector admitted to the electoral board that there would be no objection but for the sole irregularity with regard to the position of chairman of the township central committee. Thus, in this case, like in *McNamara*, we decline to "read a remedy into a statute that fails to provide for one, particularly a drastic remedy that deprives a citizen of the right to run for office." *McNamara*, 356 Ill. App. 3d at 967. In the absence of any evidence, or even an allegation of fraud or an incorrect determination of the caucus result, the party's failure to strictly comply with section 45-20 of the Township Code was of no consequence.

¶ 59                                          CONCLUSION

¶ 60 We reverse the decision of the electoral board, reverse the corresponding judgments of the circuit court denying the petitions for judicial review of the board's decision, and find that the candidates' nominating papers are sufficient and they should appear on the ballot for the April 9, 2013 consolidated election.

¶ 61 Reversed.